# EXHIBIT 4

1 | **AHMED SHAIKH, Attorney at Law**
State Bar No: 208016
2 | 14471 Chambers Rd, Suite 103
Tustin, CA 92780
3 | Telephone: 714-505-3631
Facsimile: 714-409-3055
4 | Attorney for
H. KEVIN GOULD
5 | JONATHAN L. GOULD

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**01/21/2016** at 02:06:00 PM
Clerk of the Superior Court
By Laura Ojeda,Deputy Clerk

04/18/2016

09:00 AM

C06

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| H. KEVIN GOULD AND JONATHAN L. GOULD,  TRUSTEES OF THE GOULD FAMILY TRUST | Case No. 30-2014-00705873-PR-TR-CJC |
| Petitioners, | PETITION UNDER PROBATE CODE §§ 850, 859, AND WELF & I C §15610 AND CIVIL CODE §3345 |
| vs. | Date: ~~3/24/2016~~  4/18/16 |
| EFT MANAGEMENT SERVICES INC., A FLORIDA CORPORATION; BANCOM FINANCIAL GROUP LLC; COMPANY 1 THROUGH 100 INCLUSIVE, STACY CELIDONIA, DEBBIE TISI, RANDY NOLTE and  RYAN NOLTE, | Time: 9:00 AM  Dept:  ~~C07~~   C0V |
| Respondents. | |

Petitioners JONATHAN L. GOULD and H. KEVIN GOULD, Trustees of the GOULD FAMILY TRUST hereby file this position pursuant to probate code §§ 850, 859, and Welf & I C §15610 and the Civil Code §3345.

///

///

///

1

PETITION UNDER PROBATE CODE §§ 850, 859, AND WELF & I C §15610 AND THE CIVIL CODE §3345

## EXHIBITS

All Exhibits referred to and attached to the Petition are incorporated herein by reference. The Exhibits are:

Exhibit "1" – Petition Under Probate Code §§ 850, 859, Welf & I C § 15610 And Civil Code § 3345

Exhibit "2" – Petition for Instructions RE: Ownership of Assts (Probate Code Section 17200.1)

Exhibit "3" – First Amended Petition for Instructions Pursuant To Probate Code Sections 17200 And 15404

Exhibit "4" – Petition for Probate of Will and Letters Testamentary, DE-111

Exhibit "5" – Petition Under Probate Code §850 (A) (3) (B) And Civil Code §§1717 And 1549 Et Seq.

Exhibit "6" – Loan Agreement

Exhibit "7" – Pledge Agreement

Exhibit "8" – Promissory Note

## FACTS

1.    Petitioners are the Trustees of the GOULD FAMILY TRUST dated March 26, 1993, particularly with regard to the portion of the Trust from the property of ORVAL E. GOULD, who died on January 14, 2014 at the age of 82. ROSALIA GOULD, deceased spouse with whom ORVAL E. GOULD completed is revocable living trust, died on August 7, 1993.

2.    Several prior petitions have been filed in this matter. This includes a prior petition under the same statutes against DIANNA K. GOULD, JERRY SCHATZ, and SUE ANNA SCHATZ with a somewhat different factual background (**Exhibit 1**). Other Petitions include **Exhibits 2, 3 and 4**). EFT MANAGEMENT SERVICES INC. (EFT) and BANCOM FINANCIAL GROUP LLC (BANCOM) are also respondents to a related petition under §850(a)(3)(B) and Civil Code §§1717 and 1547, et seq (**Exhibit 5**).

3.    ORVAL E. GOULD is survived by a spouse, DIANNA K. GOULD, as well as four sons, all of whom are unrelated to his spouse; these are H KEVEN GOULD, JAMES C.

2

GOULD, DANIEL C. GOULD and JONATHAN L. GOULD. DIANNA K. GOULD's status as a beneficiary is presently disputed and is presently being litigated. The Trustees are H. KEVIN GOULD and JONATHAN L. GOULD, who has been added as a Co-Trustee by agreement.

4.      ORVAL E. GOULD, entered into multiple agreements concerning a $300,000.00 loan to two entities known as BANCOM and EFT. The GOULD FAMILY TRUST was the lender in each document, including a Loan Agreement (**Exhibit 6**), a Pledge Agreement (**Exhibit 7**) and a Promissory Note (**Exhibit 8**).

5.      The Loan Agreement, in relevant part, specifies the following:

This was an agreement between BANCOM and EFT. It acknowledged the Promissory Note dated June 10, 2011 in the amount of $300,000. Furthermore, creditor could take a 10% membership interest in BANCOM if there is a default on this agreement.

6.      The note was to be paid off in the form of $.10, from each "approved, surcharge point of banking transaction that is processed through borrower in the prior month commencing in February 2012 for transactions processed in January 2012".Additional payment terms included the ability to pay back the loan in full or in part at any time without any prepayment penalty.

7.      Starting March 15, 2013, Trustee and his then wife were to receive a monthly rebate equal to $.20 times the number of surcharge transactions that BANCOM would receive (from the surcharge processing revenue for AMERICAN ATM images point of banking terminals." This rebate would be in the amount of $120,000 per year.

8.      The rebates were specifically not to be paid to the lender, which was explicitly the Trust, but rather to ORVAL E. GOULD and DIANA K. GOULD.

9.      Another provision included a BANCOM membership interest and "burn off." The GOULD FAMILY TRUST agreed to release from the Pledge agreement, 10% of the membership interest in BANCOM and 10% of the membership interest in EFT for every $30,000 received by the lender. The agreement further stated that "if lender fails to receive the total sum of three hundred thousand dollars ($300,000) than the pledge agreement shall control the remaining membership interest subject to thereto."

3

PETITION UNDER PROBATE CODE §§ 850, 859, AND WELF & I C §15610 AND THE CIVIL CODE §3345

10.     The governing law was agreed to be California had any legal proceeding would take place only in state or federal courts located in Orange County California.

11.     Furthermore, the parties agreed to a Promissory Note in the amount of $300,000. The parties to this Promissory Note were EFT and the GOULD FAMILY TRUST.

12.     While some payments were made, EFT had represented that none of the payments were to be counted as principle payments, thus the entire $300,000.00 is still due.

13.     ORVAL E. GOULD's relationship with EFT and BANCOM was through his wife, DIANNA K. GOULD and ownership in businesses related to ATM's.

14.     ORVAL E. GOULD was never directly involved in the ATM business, based on information and belief.

15.     Petitioner understands, based on information and belief, the purpose behind this loan and its unusual terms was because it was represented to both DIANA GOULD and ORVAL E. GOULD that the purpose behind this loan was to build a software platform for Electronic Transfer Processing.

16.     Based on information and belief, it was represented to ORVAL E. GOULD that Development of a software platform would have resulted in a substantial potential income for both ORVAL E. GOULD and DIANNA K. GOULD.

17.     Based on information the representation of a new platform was made by EFT, BANCOM and in their personal capacities, STACY CELIDONIA, DEBBIE TISI, RANDY NOLTE and RYAN NOLTE.

18.     Based on information and belief, RYAN NOLTE was the beneficiary of the improperly procured loan and separately agreed to pay it off, and defaulted.

19.     Based on information and belief, development of this platform would be the work of BANCOM.

20.     Based on information and belief, the promised platform was never built and the $300,000 was used by the Respondents in a manner inconsistent was what was represented to decedent and that minimal to no effort was expended to build the promised platform.

21.     BANCOM as an entity ceased to exist.

4

PETITION UNDER PROBATE CODE §§ 850, 859, AND WELF & I C §15610 AND THE CIVIL CODE §3345

## JURISDICTION

22.     This event was a resident of Orange County, California and died in Orange County. Other related matters have been filed in Orange County. Under the relevant contract agreement, jurisdiction and venue as Orange County were agreed upon by the parties. Particularly EFT and BANCOM. These agreements were signed by RANDY NOLTE and STACY CELIDONIA.

## STANDING

23.     H. KEVIN GOULD Is named as the Successor Trustee of Decedent's Trust and Personal Representative in the will. He has requested JONATHAN L. GOULD act with him as Co-Trustee and Co-Personal Representative.

## THIS EVENT WAS AT ALL RELEVANT TIMES AND "ELDER"

24.     Under welfare and institutions code §15610 .27, at all relevant times, ORVAL E. GOULD was an "elder" as he was over 65 years of age. Therefore, he was protected under the ELDER ABUSE AND DEPENDENT PROTECTION ACT (EADACPA).

## RESPONDENTS WERE FIDUCIARIES

25.     Decedent handed over $300,000 to respondents based on representations made by respondents. They signed multiple agreements evidencing obligations.

## RESPONDENT ENGAGED IN FINANCIAL ELDER ABUSE

26.     Under EADEAPA, Specifically Welf I C 15610.30, financial elder abuse occurs when a person or entity:

•       Takes, secretes, appropriate, obtains, or attains real or personal property of an elder or a dependent adult for wrongful use or with the intent to defraud, or both;

•       Assists in taking, secreting, appropriating, obtaining, or retaining the property of an elder or a dependent adult for wrongful use or with the intent to defraud, or both; or

•       Takes, secretes, appropriates, obtains, or retains, or assist in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Welf & I C §15610.70

5

PETITION UNDER PROBATE CODE §§ 850, 859, AND WELF & I C §15610 AND THE CIVIL CODE §3345

27.     Respondents obtained or assisted in obtaining property from an elder with intent of wrongful use or to defraud. This occurred when respondent sought a loan for a purpose different from what the funds were actually used for. The result was a significantly lower payout and a default on payment of the loan.

28.     Petitioners informed and believe respondent committed fraud on the decedent by utilizing funds for purposes other than developing a platform for funds transfers. Respondents engaged in fraud in obtaining this loan on a false pretense and then defaulting. Based on information and belief, the default was by design.

29.     Welfare and institutions code §15610.30 (1) and (2) does not require a showing of undue influence. However, petitioner is informed and believes undue influence was utilized in the obtaining of this loan.

30.     The victim was vulnerable to elder abuse and an additional petition concerning elder abuse has also been filed in a related matter.

## RESPONDENTS WRONGFULLY TOOK ASSETS THAT BELONGS TO DECEDENT

31.     In obtaining of a loan for $300,000, much of the discussion took place with DIANA K. GOULD, who was utilized by respondents in order to both obtain the funds in the first place through use of her confidential relationship. This loan and not a repayment was a source of stress and hardship during decedent's last months.

## LIABILITY SHOULD EXTEND TO PERSONAL LIABILITY OF RESPONDENTS

32.     Petitioner has already requested relief for repayment (**Exhibit**). In addition to EFT and BANCOM being liable for repayment, it is requested STACY CELIDONIA, DEBBIE TISI, RANDY NOTLE and RYAN NOLTE also be held liable for repayment personally. The liability should be joint and several.

## RESPONDENTS ARE LIABLE TO DAMAGE IN ADDITION TO REPAYMENT

33.     Due to additional discovery of facts, petitioner now alleges respondents acted with recklessness, fraud and malice. Pursuant to probate code §859, as respondents acted in bad

6

PETITION UNDER PROBATE CODE §§ 850, 859, AND WELF & I C §15610 AND THE CIVIL CODE §3345

1   faith in dealing with an elder and the estate, they would be liable for twice the recovery amount;

2   however, this would not be limited by other remedies available, including attorneys fees and

3   twice to recover damages.

4        34.   Respondents' conduct constituted financial abuse under welfare and institutions

5   code §15610.30 (a) (1) and (a) (1) and (a)(3). Remedies are sought resorts to welfare and

6   institutions code §15657.5. Attorney's fees and costs are sought pursuant to welfare and

7   institutions code §15657, 15657.5 and probate code §859 and Civil Code §3345. Respondents

8   are also liable for decedent's pain and suffering, according to proof, and punitive damages.

9   **PRAYER**

10        1.   It is respectfully requested property belonging to the decedent's estate be returned

11   to the estate and be administered pursuant to the wishes of the decedent. Furthermore, it is

12   requested that respondents pay twice the damages for all assets belonging to the decedent under

13   their control, according to proof, including all payments and equity interests. Assets borrowed

14   from the Trust must be returned to the Trust, including twice the recovered damages. Assets not

15   originating from the Trust and damages should be returned to the decedents the estate and

16   ultimately into the Trust.

17

18   Respectfully submitted,

19

20   _____        Date: 1/20/15

21   Ahmed Shaikh, Attorney for Trustees and Petitioners

22   H. Kevin Gould and Jonathan L. Gould

23

24

25

26

27

28

7

PETITION UNDER PROBATE CODE §§ 850, 859, AND WELF & I C §15610 AND THE CIVIL CODE §3345

**VERIFICATION**

I have read the foregoing

**PETITION UNDER PROBATE CODE §§ 850, 859, AND WELF & I C §15610 AND THE
CIVIL CODE §3345**

and know the contents thereof, and I certify that the same is true of my own knowledge except as

to those matters which are therein stated upon my information or belief, and as to those matters I

believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the
foregoing is

true and correct.

Executed on _1-11-16_____, 2016 By: _H. K. Gould_____

H. Kevin Gould

Executed on _____, 2015 By: _____

Jonathan L. Gould

PETITION UNDER PROBATE CODE §§ 850, 859, AND WELF & I C §15610 AND THE CIVIL CODE §3345

EXHIBIT 4, Page 76

**VERIFICATION**

I have read the foregoing

**PETITION UNDER PROBATE CODE §§ 850, 859, AND WELF & I C §15610 AND THE CIVIL CODE §3345**

and know the contents thereof, and I certify that the same is true of my own knowledge except as to those matters which are therein stated upon my information or belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is

true and correct.

Executed on _____, 2015 By: _____

H. Kevin Gould

Executed on 1/11/2016, 2015 By: _____

Jonathan L. Gould

8

PETITION UNDER PROBATE CODE §§ 850, 859, AND WELF & I C §15610 AND THE CIVIL CODE §3345

PROOF OF SERVICE

I declare that:

I am over the age of eighteen years, residing or employed in the County of Orange, State of California, and am not a party to the within entitled action;

My business address is 14471 Chambers Rd, Suite 103, Tustin, CA 92780;

On *January 25, 2016*, I served the foregoing document(s):

**PETITION UNDER PROBATE CODE §§ 850, 859, AND WELF & I C §15610<br>AND THE CIVIL CODE §3345**

on all interested parties listed below by:

☒ By ELECTRONIC SERVICE via .pdf email to the email address(es) listed on ATTACHED SERVICE LIST.

☒ By MAIL as follows: by placing a true copy enclosed in a sealed envelope, with postage fully prepaid in the United States mail at Tustin, CA, addressed as stated on ATTACHED SERVICE LIST.

*I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed at Tustin, California on*

*January 25, 2016*

Leslie Mills

9

PETITION UNDER PROBATE CODE §§ 850, 859, AND WELF & I C §15610 AND THE CIVIL CODE §3345

1

## SERVICE LIST

2

3

4     Scott T. Lyon, Esq.
      Sedgwick LLP
5     200 Main St, Ste 1100
      Irvine, CA 92614-8234
6     Email: scott.lyon@sedgwicklaw.com

7     EFT Management Services, Inc
      c/o Stacey Celidonia, Registered Agent
8     10729 Edinburgh Street
      Cooper City, Fl 33026
9

10    Stacy Celidonia
      10729 Edinburgh Street
11    Cooper City, Fl 33026

12    Deborah Tisi
13    6761 SW 12th St
      Pembroke Pines, FL 33023-2047
14

15    Randy Nolte
      10759 Nashville Dr
16    Hollywood, FL 33026-4903

17    Ryan Nolte
18    2129 NW 76th Ter
      Hollywood, FL 33024-3653
19

20    Daniel C. Gould
      1451 N. Glassell St, Unit B
21    Orange, CA 92867

22    James K. Gould
      P.O. Box 6041
23    Orange, CA 92863

24

25    H. Kevin Gould
      75496 South 250 Road
26    Wagoner, OK 74467

27    Jonathan L. Gould
      24032 Sprig St
28    Mission Viejo, CA 92691

10

PETITION UNDER PROBATE CODE §§ 850, 859, AND WELF & I C §15610 AND THE CIVIL CODE §3345

# Exhibit 1

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**09/22/2014** at 03:05:00 PM
Clerk of the Superior Court
By Laura Ojeda,Deputy Clerk

1  **AHMED SHAIKH, Attorney at Law**
State Bar No: 208016
14471 Chambers Rd, Suite 103
2  Tustin, CA 92780
Telephone: 714-505-3631
3  Facsimile: 714-409-3055

4

5

6  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF ORANGE**

7

8  H. KEVIN GOULD AND JONATHAN L.  ) Case No. 30-2014-00705873-PR-TR-CJC
   GOULD, TRUSTEES OF THE GOULD  )
9                                   ) **PETITION UNDER PROBATE CODE §§**
   FAMILY TRUST  ) **850, 859, WELF & I C § 15610 AND CIVIL**
10        Petitioner,  ) **CODE § 3345**
                                    )
11 vs.  ) Date: ~~10/30/2014~~ 12/2/14
                                    ) Time: ~~10:20 AM~~ 9:00 am
12                                  ) Dept: ~~C08~~        C19
                                    )
13 DIANA GOULD; JERRY SCHATZ;  )
   SUEANNA SCHATZ; MORTGAGE  )
14                                  )
   COMPANY 1; MORTGAGE COMPANY 2;  )
15 ATM BUSINESS; and DOES 1 THROUGH  )
   100 inclusive,  )
16                                  )
17        Respondents.  )
                                    )
18                                  )

19

20     Petitioners JONATHAN L. GOULD and H. KEVIN GOULD, Trustees of the Gould

21 Family Trust hereby file this petition pursuant to Probate Code §§ 850, 859 and Welf & I C §

22 15610 and Civil Code § 3345.

23     **Facts**

24     Petitioners are Trustees of the Gould Family trust dated March 26, 1993, particularly with

25 regard to the portion of the trust from the property of ORVAL E. GOULD, who died on January

26 14, 2014 at the age of 82. ROSALIA GOULD, his prior spouse which whom ORVAL E.

27 GOULD completed his Revocable Living Trust, died on August 7, 1993. Petitioners have further

28 filed for probate **(Exhibit 1)** under a pour over will of the same date **(Exhibit 2)**. ORVAL E.

1

PETITION UNDER PROBATE CODE AND CIVIL CODE

Exhibit 1
Page 1 of 8

EXHIBIT 4, Page 81

1    GOULD I is survived by a spouse, DIANNA K. GOULD, as well as four sons, all of whom are
2    unrelated to his spouse; these are H. KEVIN GOULD, JAMES C. GOULD, DANIEL C.
3    GOULD and JONATHAN L. GOULD. He had no issue from one deceased child, ORVAL E.
4    GOULD, JR. Pursuant to the Trust and last will, the sole surviving Trustee and Executor, H.
5    KEVIN GOULD, has appointed JONATHAN L. GOULD as co-Trustee and has asked for him
6    to serve as co-Personal Representative in the Probate Petition.

7         ORVAL E. GOULD left a Living Trust, executed prior to the death of a prior wife in
8    1993 (Exhibit 3). Trustees have filed a Heggstad petition to confirm the assets are in the Trust
9    (Exhibit 4).

10        DIANNA K. GOULD married Decedent after the creation of the Trust, but both she and
11   the Decedent were aware of its existence (Exhibit 5) and chose to not update the Estate Plan
12   other than creating a Premarital Agreement. DIANNA K. GOULD agreed as part of a premarital
13   agreement that all property would remain separate property and waived her rights on the death of
14   Decedent (Exhibit 6).  DIANNA K. GOULD has filed petitions regarding herself as an omitted
15   spouse as she claims she did not know what she was signing and did not understand complicated
16   agreements such as contracts (Exhibits 7 and 8). Petitioners have responded to these pleadings
17   (Exhibit 9).

18        DIANNA K. GOULD had frequently stated to members of the Gould family the
19   premarital agreement was her idea and that she and her husband ORVAL E. GOULD would
20   keep their property separate. Further, she emphasized she did not want anything from ORVAL E.
21   GOULD. DIANNA K. GOULD expressed this to the Decedent, to his children and to his
22   daughters in law. Furthermore, DIANA K. GOULD further relied on property being separate in
23   order to obtain needs-based benefits, based on information and belief.

24        In reliance on this agreement, ORVAL E. GOULD had joined in as a partner with
25   DIANNA K. GOULD in an ATM business (Exhibit 10), though there was an ATM business that
26   was owned solely by ORVAL E. GOULD. These businesses were, based on information and
27   belief, managed by DIANNA K. GOULD, her son in law JERRY SCHATZ and daughter SUE
28

2

PETITION UNDER PROBATE CODE AND CIVIL CODE

Exhibit 1
Page 2 of 8

1   ANNA SCHATZ. Petitioner is presently ignorant of the identities of all parties in this matter and
2   has named DOES 1 through 100 as potential Respondents as more discovery is conducted.

3       The business, which involved installation of various ATM Machines under several
4   different business names, including but not limited to Enterprise ATM, FastCash Biz and
5   American ATM Image Services Serving the Continental USA. FastCash ATM was a separate
6   ATM business that was the sole and separate property of ORVAL E. GOULD. Respondents
7   managed the business and continue to do so without court authorization, despite not having any
8   ownership interest in FastCash ATM and not having any interest in ¼ of the partnership. Based
9   on information and belief, all cash in the Partnership ATM's belonged to Decedent as well as all
10  cash in the sole proprietorship ATM's. This amounts to over $5,000,000.00 at any given time..

11      Based on information and belief, DIANNA K. GOULD frequently used her influence
12  with ORVAL E. GOULD to ask for money for the ATM business and other purposes, which
13  ORVAL E. GOULD provided in the form of various loans likely in excess of $500,000, though
14  the total amount of these loans and what precisely was returned to the Trust is to be ascertained
15  through discovery. DIANNA K. GOULD would even brag about her ability to get ORVAL E.
16  GOULD to sign documents and checks. Based on information and belief, she had claimed most
17  of the money was for the purpose of the ATM business while $130,000.00 was for JERRY
18  SCHATZ and his felony criminal trouble. Many loans however did not have any known business
19  purpose and appear to have been designed to transfer money to herself and her partners directly.
20  In many cases, the loans were never paid back but in others, they were paid back to an account
21  she controlled with "joint tenancy with right of survivorship", based on information and belief.

22      DIANNA K. GOULD had a criminal record throughout this period, a fact not disclosed
23  to ORVAL E. GOULD or the Gould family based on information and belief.

24      Almost immediately after the death of ORVAL E. GOULD, Respondents acted to take
25  control of all businesses and all paperwork relating to the businesses. This includes assets of
26  mostly cash in excess of $5,000,000.00, based on information and belief, much of which is
27  separate property of Decedent.

28

3

---

PETITION UNDER PROBATE CODE AND CIVIL CODE

Exhibit 1
Page 3 of 8

**Jurisdiction**

Decedent was a resident of Orange County, California and died in Orange County. Other related matters have been filed in Orange County. Jurisdiction and venue are proper. Prob C § 7051.

**Standing**

H. KEVIN GOULD is named as the Successor Trustee of Decedent's Trust and Personal Representative in the Will. He has requested JONATHAN L. GOULD act with him as co-Trustee and co-Personal Representative in the pending Probate matter.

**Decedent Was At All Relevant Times an "Elder"**

Under Welfare and Institutions Code §15610.27, at all relevant times, ORVAL E. GOULD was an "elder" As he was over 65 years of age. Therefore, he was protected under The Elder Abuse and Dependent Adult Civil Protection Act (EADACPA).

**Respondents Were Fiduciaries**

DIANNA K. GOULD was married to ORVAL E. GOULD and the two had a confidential relationship despite her non-disclosure of her prior criminal record. The Partnership agreement ORVAL E. GOULD had signed with JERRY SCHATZ and SUE ANNA SCHATZ for the ATM business and at least one additional loan also demonstrated a fiduciary duty. ORVAL E. GOULD was 77 years old at the time this partnership was created and not directly managing any of the ATM businesses, including the ATM business owned solely by Decedent and all cash belonged to Defendant.

**Respondent Engaged in Financial Elder Abuse**

Under EADACPA, specifically Welf & I C § 15610.30, financial elder abuse occurs when a person or entity:

- Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or a dependent adult for a wrongful use or with intent to defraud, or both;

- Assists in taking, secreting, appropriating, obtaining, or retaining the property of an elder or a dependent adult for a wrongful use or with intent to defraud, or both; or

---

4

**PETITION UNDER PROBATE CODE AND CIVIL CODE**

Exhibit 1
Page 4 of 8

EXHIBIT 4, Page 84

- Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Welf & I C §15610.70.

Respondents obtained property from an elder with intent of wrongful use or to defraud. This occurred when Respondent sought several dozen loans for use in an ATM business that were often not used for the business and was not meant to be paid back. It was a method to transfer assets from the trust, where none of the Respondents were beneficiaries, to the Respondents.

Under Welfare and Institutions Code §15610. 30 (b), "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult."

Furthermore, under Welfare and Institutions Code §15610. 30 (c), a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult.

Respondents schemed to harm Decedent by depriving him of his property and aggressively attempting to modify his own testamentary wishes by transferring property to Respondents accounts controlled by Respondents.

Welfare and Institutions Code §15610.30 (1) and (2) do not require a showing of "undue influence" though §15610.30 (3) includes the requirement. Petitioner asserts that all three definitions of financial elder abuse have been met.

The term "undue influence" under Welfare and Institutions Code §15610.70 "means excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity."

Various factors provided in the statute are present, including vulnerability of the victim, who is 82 years old at death, the authority of Respondents, particularly DIANNA K. GOULD who was the wife and bragged to others about her ability to control Decedent, the ability to control activities of daily living, interaction with others, use of affection, intimidation and coercion, initiation of changes in personal property rights in the inequity of the result of Respondent's scheme.

DIANNA K. GOULD, SUE ANNA SCHATZ and JERRY SCHATZ, utilized their confidential, personal and business relationship in order to frequently ask Decedent for loans and with no legitimate business purpose that were never to be repaid or provided illusory repayments, meant to benefit only Respondents. Petitioners are informed and believe this was merely a scheme by the partners in bad faith to transfer large sums of money to themselves from Decedent by taking advantage of the confidential business and personal relationship with an elder.

Discovery for this financial elder abuse scheme has not yet been completed by Petitioners and will require additional discovery to ascertain the extent of this scheme. However based on information and belief, over $500,000 has been loaned by ORVAL E. GOULD, though discovery may result in a different result. This amount is subject to change in a subsequent supplemental petition as discovery becomes available.

**Respondents Took Assets That Belonged To Decedent**

ORVAL E. GOULD was the sole owner of FastCash ATM Systems. There was an additional partnership with various other ATM businesses (**Exhibit 10**). While two thirds of the business that is run through a partnership agreement continues to be owned and operated by other Partners, one quarter of the business properly belongs to the estate of the Decedent. Furthermore, 100% of the business known as FastCash ATM belongs to the Estate of ORVAL E. GOULD and must be returned to the Estate pursuant to Probate Code Section 850. These assets, belonging to the estate of the Decedent and control of the ATM business was taken in bad faith with no authority to do so. These assets amount to approximately five million dollars based on information and belief.

6

PETITION UNDER PROBATE CODE AND CIVIL CODE

Exhibit 1
Page 6 of 8

EXHIBIT 4, Page 86

**Respondents Are Liable For Damages In Addition To Repayment**

Respondents acted with recklessness, fraud and malice. Pursuant to Probate Code Section 859, as Respondents acted in bad faith in dealing with an elder and the estate, they would be liable for twice the recovered amount; however this would not be limited by other remedies available, including Attorney fees and twice the recovered damages.

Respondents' conduct constituted financial abuse under Welf & I C § 15610.30 (a) (1) and (a)(3). Remedies are sought pursuant to Welf & I C § 15657.5. Attorney fees and costs are sought pursuant to Welf & I C § 15657, Welf & I C § 15657.5 and Probate Code Section 859 and Civil Code Section 3345. Respondents are also liable for Decedent's pain and suffering, according to proof, and punitive damages.

**Prayer**

It is respectfully requested property belonging to the Decedent's estate be returned to the Estate and be administered pursuant to the wishes of the Decedent. Furthermore, it is requested that Respondents pay twice the damages for all assets belonging to the Decedent under their control. Assets borrowed from the Trust must be returned to the Trust, including twice the recovered damages. Assets not originating from the Trust and damages should be returned to Decedent's estate.

It is respectfully requested assets secreted from the Decedent's trust be returned to the Trust, as well as any damages, while other assets be transferred to the trust through the probate petition pursuant to the pour over will.

Respectfully submitted,

_____    Date: 9/22/19

Ahmed Shaikh, Attorney for Trustees and Respondents

H. Kevin Gould and Jonathan L. Gould

---

7

PETITION UNDER PROBATE CODE AND CIVIL CODE

Exhibit 1

Page 7 of 8

**VERIFICATION**

I have read the foregoing

**PETITION UNDER PROBATE CODE §§ 850, 859, WELF & I C § 15610 AND CIVIL CODE § 3345**

and know the contents thereof, and I certify that the same is true of my own knowledge except as to those matters which are therein stated upon my information or belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on ___9-19___, 2014 By: _____
                                      H. Kevin Gould

Executed on ___9-19___, 2014 By: _____
                                      Jonathan L. Gould

8

PETITION UNDER PROBATE CODE AND CIVIL CODE

Exhibit 1
Page 8 of 8

# Exhibit 2

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

02/19/2014 at 01:51:34 PM
Clerk of the Superior Court
By Brandy Mosqueda, Deputy Clerk

1  LYA R. KINGSLAND (SBN: 138178)
   ASTOR & KINGSLAND
2  1851 East First Street, Suite 1220
   Santa Ana, California 92705
3  Telephone:   (714) 245-0995
   Facsimile:   (714) 245-0171
4  Email: lrk@astor-kingsland.com

5  Attorneys for Petitioners

6

7            SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                   FOR THE COUNTY OF ORANGE

9

10 Estate of                          )  Case No.:  30-2014-00705873-PR-TR-CJC
                                      )
11 Gould Family Trust, dated March 26, )  **PETITION FOR INSTRUCTIONS
12 1993,                              )  RE: OWNERSHIP OF ASSETS**
                                      )  **(Probate Code § 17200.1)**
13 ORVAL E. GOULD, a.k.a. ORVAL       )  Date:  Hearing Set For: 4/22/2014
14 EUGENE GOULD and ORVAL GOULD,      )  Time:  AT: 9:00AM
                                      )  Dept:
15                   Deceased         )        In Dept.: C4
                                      )
16                                    )        At 700 Civic Center Dr. W
                                      )        Santa Ana, CA  92701
17

18         HENRY KEVIN GOULD and JONATHAN L. GOULD ("Petitioners"), as

19 Successor Co-Trustees of the Gould Family Trust established on March 26, 1993, hereby

20 petition the Court for instructions regarding the ownership of property to which

21 Petitioners claim title as follows:

22                              **EXHIBITS**

23         All exhibits referred to and attached to this Petition for Instructions Re: Ownership

24 of Assets ("Petition") are incorporated herein by reference.  The Exhibits are:

25         **Exhibit "A" – Gould Family Trust, dated March 26, 1993;**

26         **Exhibit "B" – Death Certificates of Orval E. Gould and Rosalia M. Gould;**

27         **Exhibit "C" – Schedules "A," "B," and "C" to the Gould Family Trust, dated**

28                        **March 26, 1993;**

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

02/19/2014 at 01:51:34 PM
Clerk of the Superior Court
By Brandy Mosqueda, Deputy Clerk

                                       1

                    *Petition for Instructions re Ownership of Assets*

                                              Exhibit    **2**

                                        Pages  1  of  8

Exhibit "D" – Transfer of Personal Property to Trust and General
Assignment of Assets to Revocable Trust;

Exhibit "E" – Personal Property Assets Not Titled in the Name of the Trust;

Exhibit "F" – Will of Orval E. Gould, and Will of Rosalia M. Gould;

Exhibit "G" – Pre-Marital Agreement, Dated August 12, 1999;

Exhibit "H" – Parties Entitled to Notice;

Exhibit "I" – Acknowledgment and Approval by Beneficiaries

## FACTS

1.     <u>Venue</u>.  The principal place of administration of the Gould Family Trust, Dated March 26, 1993, is Orange County, California.

2.     <u>Establishment of Inter Vivos Trust</u>.  On March 26, 1993, Orval E. Gould, a.k.a. Orval Eugene Gould and Orval Gould, ("Orval") and Rosalia M. Gould ("Rosalia") (collectively "Trustors") executed the <u>Gould Family Trust</u> ("Trust"), as a revocable inter vivos trust and declared themselves to be Trustees of the Trust.  A true and correct copy of the declaration of trust is attached hereto as **Exhibit "A."**

3.     <u>Death of Trustors, Successor Co-Trustees</u>.  Rosalia died on August 7, 1993. The Gould Family Survivor's Trust and Residual Trust were created under the terms of the Trust, and were each established as of that date.  Orval served as the sole Trustee of all trusts created under the Trust until his death on January 14, 2014.  A true and correct copy of each of the Trustors' death certificates, are attached hereto as **Exhibit "B,"** establishing that Rosalia predeceased Orval.  Upon the death of the Surviving Trustor, Petitioner, Henry Kevin Gould, accepted his appointment as Successor Trustee of the Trust.  Pursuant to the terms of the Trust, Henry Kevin Gould then appointed Petitioner, Jonathan L. Gould as a Co-Trustee to serve with him as Successor Co-Trustees of all trusts created under the Trust.

4.     <u>Assets Were Transferred to the Trust, Listed on Asset Schedule, and Assigned to the Trust</u>.  Pursuant to Article I on Page 1 of the Trust, Trustors declared

2

*Petition for Instructions re Ownership of Assets*

Exhibit   2
Pages   2 of   8

1   their intention to create a Trust and, specifically, declared their intent to hold, in Trust,

2   the assets described in Schedules "A," "B," and "C," attached to the Trust.  Schedules

3   "A," "B," and "C" to the Trust list Trustors' assets and particularly include all personal

4   property of Trustors.  True and correct copies of the Schedules are attached hereto as

5   **Exhibit "C."**  In addition, at the time of establishing the Trust, Trustor's executed a

6   Transfer of Personal Property to Trust ("Transfer"), dated March 26, 1993, stating their

7   intention to transfer all personal property owned by Trustors whether community or

8   separate property in character, to the Trust.  A true and correct copy of this Transfer is

9   attached hereto as **Exhibit "D."**  Further, on or about November 9, 2010, Orval, as the

10  surviving Spouse and Trustor, executed a General Assignment of Assets to Revocable

11  Trust ("General Assignment") by which he assigned to the Trustee of his Survivor's

12  Trust, "all of his right, title and interest in and to all real and personal property," as set

13  forth in the first paragraph of the General Assignment.   A true and correct copy of the

14  General Assignment is also attached hereto as **Exhibit "D."**

15          5.      Property Not Transferred into the Trust.  Despite Trustors' intention to re-

16  title all property into the Trust name, title to certain personal property ("the Property"),

17  consisting solely of bank and brokerage accounts at various financial institutions as

18  described on **Exhibit "E"** attached hereto, remain out of the Trust, and in Orval's

19  individual name.  All of the Property is held in Orval's Survivor's Trust.  Each of the

20  accounts has existed and been held by Trustor from the time of establishment of the

21  Trust, or from prior to Orval's execution of his General Assignment.

22          6.      Deceased Trustor's Will Provides for Same Distribution of Assets as the

23  Trust.  The Trustors executed pourover Wills, immediately following the signing of the

24  Trust.  A copy of Orval's Will, dated March 26, 1993, is attached hereto as **Exhibit "F."**

25  (A copy of Rosalia's Will, dated March 26, 1993, is included in Exhibit "F" for

26  informational purposes.)  Orval's Will at Articles Three and Four, Sections 3.2 and 4.2,

27  bequeaths the entire residue of Orval's estate to the Trust, resulting in the Will and the

28  Trust having the same ultimate disposition of assets to the beneficiaries named in the

3

*Petition for Instructions re Ownership of Assets*

Exhibit | 2

Pages 6 of 8

1   Trust. The original Wills have been or will be lodged with the Court for safekeeping. A

2   review of trust assets upon Orval's death revealed that Trustors had relied on the separate

3   Transfer and General Assignment of personal property to their Trust, and the Property

4   had inadvertently not been re-titled to the name of the Trust.

5       7.      Orval remarried in 1999, and is survived by his second spouse, Dianna K.

6   Gould. Orval and Dianna K. Gould, nee Maize ("Dianna"), executed a Premarital

7   Agreement, dated August 12, 1999, a copy of which is attached hereto as **Exhibit "G."**

8   The terms of the Premarital Agreement provide, at Paragraph 5, that all separate property

9   of Orval and Dianna remained separate, and at Paragraphs 3 and 6, for the preclusion of

10  any community property whether from earnings during marriage, appreciation of separate

11  property, the efforts of either party, or commingled funds. Additionally, Paragraph 15

12  provides for a Waiver of Rights on Death of Other Party. None of the Property belonging

13  to surviving Trustor, Orval, was commingled with assets of Dianna's, and the Property

14  has always been maintained in Orval's separate accounts. Dianna is not a signer on any

15  account comprising the Property, and she is not a beneficiary of the Property or any

16  portion thereof.

17              **TRUSTORS' ASSETS WERE TRANSFERRED**

18              **INTO TRUST UNDER HEGGSTAD RULING**

19      8.      Assets Transferred to Trust By Trustors. The Trustors transferred the

20  Property to the Trust by (a) executing the Trust, (b) listing 'all owned personal property'

21  on the Schedules to the Trust, and (c) executing the Transfer and General Assignment

22  conveying all personal property to the Trust. In doing so, the Trustors made the Property

23  part of the Trust for all purposes.

24      9.      Heggstad Ruling. The California Court of Appeal in the Estate of Heggstad

25  16 Cal.App.4th 943, 20 Cal.Rptr.2d 433 (1993), concluded ". . . that a written declaration

26  of trust by the owner of real property, in which he names himself trustee, is sufficient to

27  create a trust in that property, and that the law does not require a separate deed

28  transferring the property to the trust." Estate of Heggstad, supra, 16 Cal.App.4th at 950.

4

*Petition for Instructions re Ownership of Assets*

Exhibit    2

Pages    4    of    8

10.   _Heggstad Follows Restatement._ Among the authorities the Heggstad Court relied upon in reaching its conclusion was the comment to Section 17 of the Restatement, Second of Trusts, which states as follows: "If the owner of property declares himself trustee of the property, the trust may be created without a transfer of title to the property." This rule applies to all property, real and personal.

11.   _Trustors Affirmatively Transferred the Property to the Trust._ In the Heggstad case, the Trustor simply listed the assets which were the subject of the revocable living trust on a schedule attached to that trust; there was no separate transfer document. In the instant case, the Trustors similarly expressed their intent that all their personal property be held in trust by (a) specifically stating so on the Schedules of Assets to the Trust, (b) by jointly executing the Transfer, and (c) by Orval, as sole acting Trustor and Trustee, executing the General Assignment of the personal property to the Survivor's Trust, all separate and apart from the Trust itself. Thus, the Trust document and Schedules, in addition to the Transfer and the General Assignment, should be sufficient to confirm title to the Property in the Trust.

12.   _Trustors Executed Written Declaration Naming Themselves Trustees._ The Property is encompassed within the description of the assets assigned to the Trust, set forth on the Trust Schedule, and in both the Transfer and the General Assignment. In accordance with the Heggstad ruling, the declaration of trust, the Transfer, and the General Assignment create a trust for the Property, even though the title to the Trust interest remained in the name of Surviving Trustor, individually, at time of Orval's death.

13.   _Requested Relief._ Therefore, Petitioners request an Order of this Court confirming that any and all accounts comprising the Property are each an asset of the Gould Family Trust and title to the Property should be delivered to Petitioners in their capacity as Successor Co-Trustees of all Trusts thereunder, to be held, administered and distributed in accordance with the terms of the Trust.

## NOTICE

14.   All the persons and entities entitled to notice of this Petition under Probate

5

_Petition for Instructions re Ownership of Assets_

Exhibit 2

Pages 5 of 8

1   Code Section 17203 are set forth in **Exhibit "H,"** attached hereto, and consist of

2   Trustor's two (2) living adult children who, together with the Petitioners, are all of the

3   four (4) beneficiaries of the Trust, as well as Orval's non-beneficiary surviving spouse.

4   Each of the beneficiaries entitled to notice has reviewed and approved this Petition, and

5   each has executed an Acknowledgment and Request that the Court grant this Petition.

6   These executed forms are attached hereto as **Exhibit "I."**  No one has requested Special

7   Notice.

8                                              **PRAYER**

9          WHEREFORE, Petitioners pray for an Order of this Court:

10         1.       Confirming that the Property, being various personal property accounts

11   described on **Exhibit "E"** to this Petition, are each an asset of the Gould Family Trust,

12   set forth in **Exhibit "A,"** and that title is to be held by Henry Kevin Gould and Jonathan

13   L. Gould, as Successor Co-Trustees of the Trust, to be held, administered and distributed

14   in accordance with the terms of that Trust;

15         2.       Confirming that any title transfer documents executed by Petitioners as

16   Successor Co-Trustees, or by a Successor Trustee of the Trust, are sufficient to transfer

17   full title to the Property; and

18         3.       Making such further Orders and Instructions as the Court deems

19   appropriate.

20

21   Dated: February 10   , 2014

22                                                    _____
                                                      HENRY KEVIN GOULD
23
                                                      _____
24                                                    JONATHAN L. GOULD
                                                      Petitioners and Co-Trustees
25   ASTOR & KINGSLAND

26

27   DATED: February 10 , 2014          By: _____
                                             LYA K. KINGSLAND
28                                           Attorneys for Petitioners

                                              6
                          *Petition for Instructions re Ownership of Assets*

Exhibit    2.
Pages  6  of  8

**VERIFICATION**

STATE OF CALIFORNIA, COUNTY OF ORANGE

  I have read the foregoing **PETITION FOR INSTRUCTIONS RE: OWNERSHIP OF ASSETS (Probate Code §17200.1)** and know its contents.

  ☒ I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

  ☐ I am _____ of _____, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.  ☐ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.  ☐ The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

  ☐ I am one of the attorneys for _____, a party to this action. Such party is absent from the county where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

  Executed on ___February 10___, 2014, at ___Santa Ana___, California.

  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
HENRY KEVIN GOULD

7

*Petition for Instructions re Ownership of Assets*

Exhibit **2**

Pages **7** of **8**

1

## VERIFICATION

2

3 STATE OF CALIFORNIA, COUNTY OF ORANGE

4       I have read the foregoing **PETITION FOR INSTRUCTIONS RE:**
5 **OWNERSHIP OF ASSETS (Probate Code §17200.1)** and know its contents.

6

7 ☒    I am a party to this action.  The matters stated in the foregoing document are true of
my own knowledge except as to those matters which are stated on information and belief,
8 and as to those matters I believe them to be true.

9

☐    I am _____ of _____, a party to this action, and am authorized to make this
10 verification for and on its behalf, and I make this verification for that reason.  ☐ I am
11 informed and believe and on that ground allege that the matters stated in the foregoing
document are true.  ☐ The matters stated in the foregoing document are true of my own
12 knowledge except as to those matters which are stated on information and belief, and as
13 to those matters I believe them to be true.

14 ☐    I am one of the attorneys for _____, a party to this action.  Such party is absent
15 from the county where such attorneys have their offices, and I make this verification for
and on behalf of that party for that reason.  I am informed and believe and on that ground
16 allege that the matters stated in the foregoing document are true.

17       Executed on ___February 10___, 2014, at ___Santa Ana___, California.

18

19       I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

20

21

22

23 JONATHAN L. GOULD

24

25

26

27

28

8

*Petition for Instructions re Ownership of Assets*

Exhibit   2
Pages   8   of   8

EXHIBIT 4, Page 97

# Exhibit 3

ELECTRONICALLY FILED
Superior Court of California,
County of Orange
**10/27/2014** at 02:48:00 PM
Clerk of the Superior Court
By Laura Ojeda,Deputy Clerk

1   **AHMED SHAIKH, Attorney at Law**
State Bar No: 208016
2   14471 Chambers Rd, Suite 103
Tustin, CA 92780
3   Telephone: 714-505-3631
Facsimile:  714-409-3055

4

5

6                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

7                              **COUNTY OF ORANGE**

8   Estate of:                                    )   Case No.: 30-2014-00705873-PR-TR-CJC
                                                  )
9                                                 )   **FIRST AMENDED PETITION FOR**
                                                  )   **INSTRUCTIONS PURSUANT TO**
10  Gould Family Trust, dated March 26, 1993      )   **PROBATE CODE SECTIONS 17200 AND**
                                                  )   **15404**
11                                                )   Date: **12/22/2014**
                                                  )   Time: 9:00 AM
12  AORVAL E. GOULD, a.k.a. ORVAL                 )   Dept: C19
                                                  )
13  EUGENE COULD and ORVAL GOULD,                 )
                                                  )
14                                                )
                                                  )
15                              Deceased.         )
                                                  )
16                                                )
                                                  )
17  _____)

18

19        HENRY KEVIN GOULD and JONATHAN L. GOULD ("Petitioners"), as Successor

20  Co-Trustees of the Gould Family Trust established on March 26, 1993, hereby file this amended

21  petition the Court for instructions regarding the ownership of property to which Petitioners claim

    title as follows:
22
                                      **EXHIBITS**
23
          All exhibits referred to and attached to this Petition for Instructions Re: Ownership of
24
    Assets ("Petition") are incorporated herein by reference. The Exhibits are:
25
          Exhibit "A" - Gould Family Trust, dated March 26, 1993;
26
           Exhibit "B" - Death Certificates of Orval E. Gould and Rosalia M. Gould;
27

28

                                              1
    _____
    FIRST AMENDED PETITION FOR INSTRUCTIONS PURSUANT TO PROBATE CODE SECTIONS 17200
                          AND 15404              **Exhibit 3**
                                              **Page 1 of 7**

1       Exhibit "C" - Schedules "A," "B," and "C" to the Gould Family Trust, dated March
2                  26, 1993;
3       Exhibit "D" - Transfer of Personal Property to Trust and General
4                  Assignment of Assets to Revocable Trust;
5       Exhibit "E" - Personal Property Assets Not Titled in the Name of the Trust;
6       Exhibit "F" - Will of Orval E. Gould, and Will of Rosalia M. Gould;
7       Exhibit "G" - Pre-Marital Agreement, Dated August 12, 1999;
8       Exhibit "H"- Partnership Agreement;
9       Exhibit "I" - Bank Accounts;
10      Exhibit "J" -Parties Entitled to Notice;
11      Exhibit "K" - Acknowledgment and Approval by Beneficiaries

12                            FACTS

13      1. <u>Venue</u>. The principal place of administration of the Gould Family Trust, Dated March
14 26, 1993, is Orange County, California.

15      2. <u>Establishment of Inter Vivos Trust</u>. On March 26, 1993, Orval E. Gould, a.k.a. Orval
16 Eugene Gould and Orval Gould, ("Orval") and Rosalia M. Gould ("Rosalia") (collectively
17 "Trustors") executed the Gould Family Trust ("Trust"), as a revocable inter vivos trust and
18 declared themselves to be Trustees of the Trust. A true and correct copy of the declaration of
19 trust is attached hereto as Exhibit "A."

20      3. <u>Death of Trustors, Successor Co-Trustees</u>. Rosalia died on August 7, 1993.
21 The Gould Family Survivor's Trust and Residual Trust were created under the terms of the Trust,
22 and were each established as of that date. Orval served as the sole Trustee of all trusts created
23 under the Trust until his death on January 14, 2014. A true and correct copy of each of the
24 Trustors' death certificates, are attached hereto as Exhibit "B," establishing that Rosalia
25 predeceased Orval. Upon the death of the Surviving Trustor, Petitioner, Henry Kevin Gould,
26 accepted his appointment as Successor Trustee of the Trust. Pursuant to the terms of the Trust,
27 Henry Kevin Gould then appointed Petitioner, Jonathan L. Gould as a Co-Trustee to serve with
28 him as Successor Co-Trustees of all trusts created under the Trust.

2

---

FIRST AMENDED PETITION FOR INSTRUCTIONS PURSUANT TO PROBATE CODE SECTIONS 17200
AND 15404                     Exhibit 3
                                         Page 2 of 7

1       4. <u>Assets Were Transferred to the Trust, Listed on Asset Schedule, and Assigned to the</u>

2   <u>Trust</u>. Pursuant to Article I on Page 1 of the Trust, Trustors declared their intention to create a

3   Trust and, specifically, declared their intent to hold, in Trust, the assets described in Schedules

4   "A," "B," and "C," attached to the Trust. Schedules "A," "B," and "C" to the Trust list Trustors'

5   assets and particularly include all personal property of Trustors. True and correct copies of the

6   Schedules are attached hereto as Exhibit "C." In addition, at the time of establishing the Trust,

7   Trustor's executed a Transfer of Personal Property to Trust ("Transfer"), dated March 26, 1993,

8   stating their intention to transfer all personal property owned by Trustors whether community or

9   separate property in character, to the Trust. A true and correct copy of this Transfer is attached

10   hereto as Exhibit "D." Further, on or about November 9, 2010, Orval, as the surviving Spouse

11   and Trustor, executed a General Assignment of Assets to Revocable Trust ("General

12   Assignment") by which he assigned to the Trustee of his Survivor's Trust, "all of his right, title

13   and interest in and to all real and personal property," as set forth in the first paragraph of the

14   General Assignment. A true and correct copy of the General Assignment is also attached hereto

15   as Exhibit "D."

16       5. <u>Property Not Transferred into the Trust</u>. Despite Trustors' intention to re- title all

17   property into the Trust name, title to certain personal property ("the Property"), consisting solely

18   of bank and brokerage accounts at various financial institutions as described on Exhibit "E"

19   attached hereto, remain out of the Trust, and in Orval's individual name. All of the Property is

20   held in Orval's Survivor's Trust. Each of the accounts has existed and been held by Trustor from

21   the time of establishment of the Trust, or from prior to Orval's execution of his General

22   Assignment.

23       6. <u>Deceased Trustor's Will Provides for Same Distribution of Assets as the Trust</u>. The

24   Trustors executed pourover Wills, immediately following the signing of the Trust. A copy of

25   Orval's Will, dated March 26, 1993, is attached hereto as Exhibit "F." (A copy of Rosalia's Will,

26   dated March 26, 1993, is included in Exhibit "F" for informational purposes.) Orval's Will at

27   Articles Three and Four, Sections 3.2 and 4.2, bequeaths the entire residue of Orval's estate to

28   the Trust, resulting in the Will and the Trust having the same ultimate disposition of assets to the

3

---

FIRST AMENDED PETITION FOR INSTRUCTIONS PURSUANT TO PROBATE CODE SECTIONS 17200
AND 15404        Exhibit 3
        Page 3 of 7

EXHIBIT 4, Page 101

beneficiaries named in the Trust. The original Wills have been or will be lodged with the Court for safekeeping. A review of trust assets upon Orval's death revealed that Trustors had relied on the separate Transfer and General Assignment of personal property to their Trust, and the Property had inadvertently not been re-titled to the name of the Trust.

Orval remarried in 1999, and is survived by his second spouse, Dianna K. Gould. Orval and Dianna K. Gould, nee Maize ("Dianna"), executed a Premarital Agreement, dated August 12, 1999, a copy of which is attached hereto as Exhibit "G." The terms of the Premarital Agreement provide, at Paragraph 5, that all separate property of Orval and Dianna remained separate, and at Paragraphs 3 and 6, for the preclusion of any community property whether from earnings during marriage, appreciation of separate property, the efforts of either party, or commingled funds. Additionally, Paragraph 15 provides for a Waiver of Rights on Death of Other Party. None of the Property belonging to surviving Trustor, Orval, was commingled with assets of Dianna's, and the Property has always been maintained in Orval's separate accounts. Dianna is not a signer on any account comprising the Property, and she is not a beneficiary of the Property or any portion thereof.

7. <u>Amendment Only Adds Decedent's Trust Assets Not Previously Included.</u> Decedent was a sole proprietor in an ATM business and was a general partner in another ATM business (Exhibit "H").  **Based on information and belief, 100% of all capital in the general partnership was provided by decedent.**  A list of bank accounts associated with these businesses is located in Exhibit "I".

TRUSTORS' ASSETS WERE TRANSFERRED

INTO TRUST UNDER HEGGSTAD RULING

8. <u>Assets Transferred to Trust By Trustors.</u> The Trustors transferred the Property to the Trust by (a) executing the Trust, (b) listing' all owned personal property' on the Schedules to the Trust, and (c) executing the Transfer and General Assignment conveying all personal property to the Trust. In doing so, the Trustors made the Property part of the Trust for all purposes.

9. <u>Heggstad Ruling.</u> The California Court of Appeal in the Estate of Heggstad 16 Cal.AppAth 943, 20 Cal.Rptr.2d 433 (1993), concluded "... that a written declaration of trust by

4

the owner of real property, in which he names himself trustee, is sufficient to create a trust in that property, and that the law does not require a separate deed transferring the property to the trust." Estate of Heggstad, supra, 16 Cal.AppAth at 950.

10. <u>Heggstad Follows Restatement</u>. Among the authorities the Heggstad Court relied upon in reaching its conclusion was the comment to Section 17 of the Restatement, Second of Trusts, which states as follows: "If the owner of property declares himself trustee of the property, the trust may be created without a transfer of title to the property." This rule applies to all property, real and personal.

11. <u>Trustors Affirmatively Transferred the Property to the Trust</u>. In the Heggstad case, the Trustor simply listed the assets which were the subject of the revocable living trust on a schedule attached to that trust; there was no separate transfer document. In the instant case, the Trustors similarly expressed their intent that all their personal property be held in trust by (a) specifically stating so on the Schedules of Assets to the Trust, (b) by jointly executing the Transfer, and (c) by Orval, as sole acting Trustor and Trustee, executing the General Assignment of the personal property to the Survivor's Trust, all separate and apart from the Trust itself. Thus, the Trust document and Schedules, in addition to the Transfer and the General Assignment, should be sufficient to confirm title to the Property in the Trust.

12. <u>Trustors Executed Written Declaration Naming Themselves Trustees</u>. The Property is encompassed within the description of the assets assigned to the Trust, set forth on the Trust Schedule, and in both the Transfer and the General Assignment. In accordance with the Heggstad ruling, the declaration of trust, the Transfer, and the General Assignment create a trust for the Property, even though the title to the Trust interest remained in the name of Surviving Trustor, individually, at time of Orval's death.

13. <u>Requested Relief</u>. Therefore, Petitioners request an Order of this Court confirming that any and all accounts comprising the Property are each an asset of the Gould Family Trust and title to the Property should be delivered to Petitioners in their capacity as Successor Co-Trustees of all Trusts thereunder, to be held, administered and distributed in accordance with the terms of the Trust.

5

**NOTICE**

14. All the persons and entities entitled to notice of this Petition under Probate Code Section 17203 are set forth in Exhibit "J," attached hereto, and consist of Trustor's two (2) living adult children who, together with the Petitioners, are all of the four (4) beneficiaries of the Trust, as well as Orval's non-beneficiary surviving spouse. Each of the beneficiaries entitled to notice has reviewed and approved this Petition, and each has executed an Acknowledgment and Request that the Court grant this Petition. These executed forms are attached hereto as Exhibit "K." No one has requested Special Notice.

**PRAYER**

WHEREFORE, Petitioners pray for an Order of this Court:

1. Confirming that the Property, being various personal property accounts described on Exhibit "E" to this Petition, are each an asset of the Gould Family Trust, set forth in Exhibit "A," and that title is to be held by Henry Kevin Gould and Jonathan L. Gould, as Successor Co-Trustees of the Trust, to be held, administered and distributed in accordance with the terms of that Trust;

2. Confirming that any title transfer documents executed by Petitioners as Successor Co-Trustees, or by a Successor Trustee of the Trust, are sufficient to transfer full title to the Property; and

3. Making such further Orders and Instructions as the Court deems appropriate.

Respectfully submitted,

_____          Date: 10/27/14

Ahmed Shaikh, Attorney for Trustees and Respondents

H. Kevin Gould and Jonathan L. Gould

6

FIRST AMENDED PETITION FOR INSTRUCTIONS PURSUANT TO PROBATE CODE SECTIONS 17200 AND 15404

Exhibit 3
Page 6 of 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VERIFICATION**

I have read the foregoing

**FIRST AMENDED PETITION FOR INSTRUCTIONS PURSUANT TO PROBATE
CODE SECTIONS 17200 AND 15404**

and know the contents thereof, and I certify that the same is true of my own knowledge except as
to those matters which are therein stated upon my information or belief, and as to those matters I
believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

Executed on ____10 - 23____, 2014 By: _____

H. Kevin Gould

Executed on ____10 - 23____, 2014 By: _____

Jonathan L. Gould

7

**FIRST AMENDED PETITION FOR INSTRUCTIONS PURSUANT TO PROBATE CODE SECTIONS 17200
AND 15404**

Exhibit 3
Page 7 of 7

# Exhibit 4

DE-111

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Ahmed Shaikh, Attorney at Law<br>State Bar No. 208016<br>14471 Chambers Rd, Suite 103<br>Tustin, CA 92780<br>TELEPHONE NO.: 714-505-3696     FAX NO. (Optional): 714-409-3055<br>E-MAIL ADDRESS (Optional): plan@ahmedshaikh.com<br>ATTORNEY FOR (Name): H. Kevin Gould and Jonathan L. Gould | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**09/22/2014** at 10:54:00 AM<br>Clerk of the Superior Court<br>By Natasha Dorfman,Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive
MAILING ADDRESS: 700 Civic Center Drive
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center - Probate

ESTATE OF (Name):
Orval E. Gould
　　　　　　　　　　　　　　　　　　　　DECEDENT

| PETITION FOR ☑ Probate of Will and for Letters Testamentary<br>☐ Probate of Will and for Letters of Administration with<br>　 Will Annexed<br>☐ Letters of Administration<br>☐ Letters of Special Administration ☐ with general powers<br>☐ Authorization to Administer Under the Independent<br>　 Administration of Estates Act ☐ with limited authority | CASE NUMBER<br>30-2014-00705873-PR-TR-CJC |
|---|---|
| | HEARING DATE:<br>10/30/2014 |
| | DEPT.: C08 　 TIME 10:30 AM |

1. Publication will be in (specify name of newspaper): Mission Viejo News
   a. ☐ Publication requested.
   b. ☑ Publication to be arranged.

2. Petitioner (name each): H. Kevin Gould and Jonathan L. Gould 　　　　　requests that
   a. ☐ decedent's will and codicils, if any, be admitted to probate.
   b. ☑ (name): H. Kevin Gould and Jonathan L. Gould
      be appointed
      (1) ☑ executor
      (2) ☐ administrator with will annexed
      (3) ☐ administrator
      (4) ☐ special administrator ☐ with general powers
      and Letters issue upon qualification.
   c. ☑ full ☐ limited authority   be granted to administer under the Independent Administration of Estates Act.
   d. (1) ☑ bond not be required for the reasons stated in item 3d.
      (2) ☐ $ 　　　　　 bond be fixed. The bond will be furnished by an admitted surety insurer or as
            otherwise provided by law. (Specify reasons in Attachment 2 if the amount is different from the maximum
            required by Prob. Code, § 8482.)
      (3) ☐ $ 　　　　　 in deposits in a blocked account be allowed. Receipts will be filed.
            (Specify institution and location):

3. a. Decedent died on (date): 1/14/2014 　　　at (place): Residence - hospice
      (1) ☑ a resident of the county named above.
      (2) ☐ a nonresident of California and left an estate in the county named above located at (specify location
            permitting publication in the newspaper named in item 1):

   b. Street address, city, and county of decedent's residence at time of death (specify):
      24155 Roma Dr, Mission Viejo, CA 92691

Form Adopted for Mandatory Use
Judicial Council of California
DE-111 [Rev. March 1, 2008]

**PETITION FOR PROBATE**
(Probate—Decedents Estates)

Probate Code, §§ 8002, 10450
www.courtinfo.ca.gov

Exhibit 4
Page 1 of 6

DE-111

| ESTATE OF *(Name):* | CASE NUMBER |
|---|---|
| Orval E. Gould | 30-2014-00705873-PR-TR-C |
| DECEDENT | |

3. c. **Character and estimated value of the property of the estate** *(complete in all cases):*

   (1)  Personal property:                                            $

   (2)  Annual gross income from

       (a)  real property:       $

       (b)  personal property:       $ 5,000,000.00

   (3)  Subtotal *(add (1) and (2)):*       $

   (4)  Gross fair market value of real property:       $

   (5)  (Less) Encumbrances:       $(           )

   (6)  Net value of real property:       $

   (7)  Total *(add (3) and (6)):*       $ 5,000,000.00

d. (1) ☑ Will waives bond. ☐ Special administrator is the named executor, and the will waives bond.

   (2) ☐ All beneficiaries are adults and have waived bond, and the will does not require a bond.
       *(Affix waiver as Attachment 3d(2).)*

   (3) ☐ All heirs at law are adults and have waived bond. *(Affix waiver as Attachment 3d(3).)*

   (4) ☐ Sole personal representative is a corporate fiduciary or an exempt government agency.

e. (1) ☐ Decedent died intestate.

   (2) ☑ Copy of decedent's will dated: 3/26/1993   ☐ codicil dated *(specify for each):*

       **Last Will and Testament of Orval E. Gould**       are affixed as Attachment 3e(2).
       *(include typed copies of handwritten documents and English translations of foreign-language documents.)*
       ☐ The will and all codicils are self-proving (Prob. Code, § 8220).

f. **Appointment of personal representative** *(check all applicable boxes):*

   (1)  Appointment of executor or administrator with will annexed:

       (a) ☑ Proposed executor is named as executor in the will and consents to act.

       (b) ☐ No executor is named in the will.

       (c) ☐ Proposed personal representative is a nominee of a person entitled to Letters.
          *(Affix nomination as Attachment 3f(1)(c).)*

       (d) ☑ Other named executors will not act because of  ☑ death  ☐ declination
          ☐ other reasons *(specify):*

          **Orval E. Gould, Jr.**

          ☐ Continued in Attachment 3f(1)(d).

   (2)  Appointment of administrator:

       (a) ☐ Petitioner is a person entitled to Letters. *(If necessary, explain priority in Attachment 3f(2)(a).)*

       (b) ☐ Petitioner is a nominee of a person entitled to Letters. *(Affix nomination as Attachment 3f(2)(b).)*

       (c) ☐ Petitioner is related to the decedent as *(specify):*

   (3) ☐ Appointment of special administrator requested. *(Specify grounds and requested powers in Attachment 3f(3).)*

g. **Proposed personal representative is a**

   (1) ☑ resident of California.

   (2) ☐ nonresident of California *(specify permanent address):*

       **Jonathan L. Gould is a CA resident but H. Kevin Gould is not a resident of CA. His address is:**
       **75496 South 250 Road, Wagoner, OK 74467**

   (3) ☐ resident of the United States.

   (4) ☐ nonresident of the United States.

DE-111 [Rev. March 1, 2008]

**PETITION FOR PROBATE**
**(Probate—Decedents Estates)**

Page 3 of 4

Exhibit 4
Page 2 of 6

**DE-111**

| ESTATE OF *(Name):* | CASE NUMBER |
|---|---|
| Orval E. Gould                    **DECEDENT** | 30-2014-00705873-PR-TR-**6**  ~CJC |

4. ☑ Decedent's will does not preclude administration of this estate under the Independent Administration of Estates Act.

5. a. Decedent was survived by *(check items (1) or (2), and (3) or (4), and (5) or (6), and (7) or (8))*
   - (1) ☑ spouse.
   - (2) ☐ no spouse as follows:
     - (a) ☐ divorced or never married.
     - (b) ☐ spouse deceased.
   - (3) ☐ registered domestic partner.
   - (4) ☐ no registered domestic partner.
     *(See Fam. Code, § 297.5(c); Prob. Code, §§ 37(b), 6401(c), and 6402.)*
   - (5) ☑ child as follows:
     - (a) ☑ natural or adopted.
     - (b) ☐ natural adopted by a third party.
   - (6) ☐ no child.
   - (7) ☐ issue of a predeceased child.
   - (8) ☐ no issue of a predeceased child.

   b. Decedent ☐ was ☑ was not survived by a stepchild or foster child or children who would have been adopted by decedent but for a legal barrier. *(See Prob. Code, § 6454.)*

6. *(Complete if decedent was survived by (1) a spouse or registered domestic partner but no issue (only a or b apply), or (2) no spouse, registered domestic partner, or issue. (Check the first box that applies):*
   - a. ☐ Decedent was survived by a parent or parents who are listed in item 8.
   - b. ☐ Decedent was survived by issue of deceased parents, all of whom are listed in item 8.
   - c. ☐ Decedent was survived by a grandparent or grandparents who are listed in item 8.
   - d. ☐ Decedent was survived by issue of grandparents, all of whom are listed in item 8.
   - e. ☐ Decedent was survived by issue of a predeceased spouse, all of whom are listed in item 8.
   - f. ☐ Decedent was survived by next of kin, all of whom are listed in item 8.
   - g. ☐ Decedent was survived by parents of a predeceased spouse or issue of those parents, if both are predeceased, all of whom are listed in item 8.
   - h. ☐ Decedent was survived by no known next of kin.

7. *(Complete only if no spouse or issue survived decedent.)*
   - a. ☐ Decedent had no predeceased spouse.
   - b. ☐ Decedent had a predeceased spouse who
     - (1) ☐ died not more than 15 years before decedent and who owned an interest in real property that passed to decedent,
     - (2) ☐ died not more than five years before decedent and who owned personal property valued at $10,000 or more that passed to decedent,
       *(If you checked (1) or (2), check only the first box that applies):*
       - (a) ☐ Decedent was survived by issue of a predeceased spouse, all of whom are listed in item 8.
       - (b) ☐ Decedent was survived by a parent or parents of the predeceased spouse who are listed in item 8.
       - (c) ☐ Decedent was survived by issue of a parent of the predeceased spouse, all of whom are listed in item 8.
       - (d) ☐ Decedent was survived by next of kin of the decedent, all of whom are listed in item 8.
       - (e) ☐ Decedent was survived by next of kin of the predeceased spouse, all of whom are listed in item 8.
     - (3) ☐ neither (1) nor (2) apply.

8. Listed on the next page are the names, relationships to decedent, ages, and addresses, so far as known to or reasonably ascertainable by petitioner, of (1) all persons mentioned in decedent's will or any codicil, whether living or deceased; (2) all persons named or checked in items 2, 5, 6, and 7; and (3) all beneficiaries of a trust named in decedent's will or any codicil in which the trustee and personal representative are the same person.

DE-111 [Rev. March 1, 2008]

**PETITION FOR PROBATE**
**(Probate—Decedents Estates)**

Page 3 of 4

Exhibit 4
Page 3 of 6

DE-111

| ESTATE OF (Name): | CASE NUMBER |
|---|---|
| Orval E. Gould | 30-2014-00705873-PR-TR-6 -CJC |
| DECEDENT | |

8. Name and relationship to decedent — Age — Address

Daniel C. Gould
Son
1950 East Santa Clara Ave, # 26
Santa Ana, CA 92705

James C. Gould
Son
2295 North Tustin, #49
Orange, CA 92865

H. Kevin Gould
Son
75496 South 250 Road
Wagoner, OK 74467

Jonathan L. Gould
Son
24032 Sprig St.
Mission Viejo, CA 92691

Orval E. Gould, Jr.
Son, deceased

Diana K. Gould
Wife, not an heir due
to pre-marital agreement
17241 Iris Ave
Riverside, CA 92504

☐ Continued on Attachment 8.

9. Number of pages attached: _____

Date: 9/2/14

_____
(TYPE OR PRINT NAME OF ATTORNEY )

▶ Ahmed Shaikh
(SIGNATURE OF ATTORNEY)

* (Signatures of all petitioners are also required. All petitioners must sign, but the petition may be verified by any one of them (Prob. Code, §§ 1020, 1021, Cal. Rules of Court, rule 7.103).)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

H. Kevin Gould
_____
(TYPE OR PRINT NAME OF PETITIONER)

▶ _____
(SIGNATURE OF PETITIONER)

Jonathan L. Gould
_____
(TYPE OR PRINT NAME OF PETITIONER)

▶ _____
(SIGNATURE OF PETITIONER)

☐ Signatures of additional petitioners follow last attachment.

DE-111 [Rev. March 1, 2008]

**PETITION FOR PROBATE**
(Probate—Decedents Estates)

Page 4 of 4

Exhibit 4
Page 4 of 6

f

**Attachment 3(1)(c)**

H. Kevin Gould has appointed his brother Jonathan L. Gould as co-Personal Representative of the Gould Family Trust. Jonathan L. Gould agrees.



_____          9-19-14
H. Kevin Gould                                              Date

_____          9-19-14
Jonathan L. Gould                                         Date

1

DE-111 Attachment 3(1)(c)

Exhibit 4
Page 5 of 6

EXHIBIT 4, Page 111



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Attachment 3e(2)**

**Last Will and Testament of Orval E. Gould (copy)**

1

DE-111 Attachment 3e(2)

Exhibit 4
Page 6 of 6

EXHIBIT 4, Page 112

# Exhibit 5

1  **AHMED SHAIKH, Attorney at Law**
   State Bar No: 208016
2  14471 Chambers Rd, Suite 103
   Tustin, CA 92780
3  Telephone: 714-505-3631
   Facsimile: 714-409-3055
4  Attorney for
   H. KEVIN GOULD
5  JONATHAN L. GOULD

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**02/27/2015** at 10:07:00 AM
Clerk of the Superior Court
By Laura Ojeda,Deputy Clerk

04/21/2015

09:00 AM

C07

6

7

8               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                         **COUNTY OF ORANGE**

10

11  H. KEVIN GOULD AND JONATHAN L.        ) Case No. 30-2014-00705873-PR-TR-CJC
    GOULD, TRUSTEES OF THE GOULD          )
12  FAMILY TRUST                          ) **PETITION UNDER PROBATE CODE §850**
                                          ) **(a) (3) (B) AND CIVIL CODE §§1717 AND**
13          Petitioners,                  ) **1549 ET SEQ.**
                                          )
14  vs.                                   )
                                          )
15                                        ) Date: 5/21/2015
                                          ) Time: 9:00 AM
16  EFT MANAGEMENT SERVICES INC., A       ) Dept: C07
    FLORIDA CORPORATION; BANCOM           )
17  FINANCIAL GROUP, LLC; and COMPANY     )
18  1 THROUGH 100 inclusive,              )
                                          )
19          Respondents.                  )
                                          )
20  _____  )

21

22          Petitioner JONATHAN L. GOULD and H. KEVIN GOULD, through their Attorney of

23  record file this petition under Probate Code §850 (a) (3) (B) and Civil Code §§1717 and 1549 et

24  seq.

25                                  **FACTS**

26          1.      Petitioners are successor trustees of the Gould Family Trust dated March 26,

27  1993, particularly with regard to the portions of the trust from the property of ORVAL E.

28  GOULD, who died on January 14, 2014 at the age of 82. ROSALIA GOULD his prior spouse

                                         1
_____
PETITION UNDER PROBATE CODE §850 (a) (3) (B) AND CIVIL CODE §§1717 AND 1549 ET SEQ

Exhibit 5
Page 1 of 7

EXHIBIT 4, Page 114

1  with whom ORVAL E. GOULD completed his revocable living trust, died on August 7, 1993.
2  Prior petitions have already been filed with this trust concerning unrelated parties and disputes.

3      2.      Defendants are EFT MANAGEMENT SERVICES INC. (EFT) and BANCOM
4  FINANCIAL GROUP LLC (BANCOM).

5      3.      ORVAL E. GOULD is survived by a spouse, DIANNA K. GOULD, as well as
6  four sons, all of whom are unrelated to his surviving spouse. They are H. KEVIN GOULD,
7  JAMES K. GOULD, DANIEL C. GOULD, and JONATHAN L. GOULD. He had no issue from
8  one deceased child, ORVAL E. GOULD, JR. Pursuant to the trust and last will and testament,
9  the sole surviving trustee and executor, H. KEVIN GOULD has appointed JONATHAN L.
10  GOULD as a cotrustee and has asked him to serve as co-personal representative in the probate
11  petition.

12      4.      ORVAL E. GOULD left a living trust, executed prior to his death with a prior
13  wife in 1993 (**Exhibit 1**). Trustees have filed a Heggstad petition to confirm the assets are in the
14  trust (**Exhibit 2**).

15      5.      There are currently other matters pending concerning a premarital agreement
16  dispute as well as other properties claimed by the trustee now in the possession of other
17  individuals. These are under case numbers 30-2014-00705873-PR-TR-CJC, 30-2014-00761988-
18  PR-TR-CJC and 30-2014-00744614-PR-TR-CJC in the court shown above.

19      6.      On June 10, 2011, respondent EFT MANAGEMENT SERVICES INC., A
20  FLORIDA CORPORATION, (EFT) and BANCOM FINANCIAL GROUP LLC (BANCOM)
21  entered into a contract through a series of documents where decedent, ORVAL E. GOULD, who
22  served as a grantor and the trustee of the Gould Family Trust, agreed to lend $300,000 to EFT.
23  The Gould Family Trust was identified as the lender in each document, including a loan
24  agreement (**Exhibit 3**), a promissory note (**Exhibit 4**), and a pledge agreement (**Exhibit 5**).

25      7.      The loan agreement, in relevant part, specify the following:
26      This was an agreement between BANCOM FINANCIAL GROUP, LLC (BANCOM)
27      and EFT MANAGEMENT SERVICES, INC. (EFT). It acknowledged a promissory note
28      dated June 10, 2011 in the amount of $300,000. Furthermore, there was a pledge

2

PETITION UNDER PROBATE CODE §850 (a) (3) (B) AND CIVIL CODE §§1717 AND 1549 ET SEQ

Exhibit 5
Page 2 of 7

1   agreement between these 3 parties indicating a 10% membership interest in BANCOM
2   and of EFT unless there is a default on this loan agreement.

3   8.      The note was to be paid in the form of $.10, from each "approved, surcharged
4   point of banking transaction that is processed through borrower in the prior month commencing
5   in February 2012 for transactions processed in January 2012.) Additional payment terms
6   included the ability to pay back the loan in full or in part at any time without any prepayment
7   penalty.

8   9.      Starting on March 15, 2013, trustee and his then wife or to receive a monthly
9   rebate equal to $.20 times the number of surcharge transactions that BANCOM would receive
10  (from surcharge processing revenue for American ATM images point of banking terminals."
11  This rebate would be in the amount of $120,000 per year.

12  10.     The rebates were specifically not to be paid to the lender, which was explicitly the
13  trust, but rather to ORVAL E. GOULD AND DIANNA K. GOULD.

14  11.     Another provision included a BANCOM membership interest and "burn off." The
15  Gould Family Trust agreed to release from the pledge agreement, 10% of the membership
16  interest in BANCOM and 10% of the membership interest in EFTA for every $30,000 received
17  by the lender. The agreement further stated "if lender fails to receive the total sum of three
18  hundred thousand dollars ($300,000) then the pledge agreement shall control the remaining
19  membership interest subject thereto." (Exhibit 3, page 2).

20  12.     The governing law was agreed to be in California and any legal proceeding would
21  take place only in state or federal courts located in Orange County, California.

22  13.     Furthermore, the parties agreed to a promissory note in the amount of $300,000.
23  The parties to this promissory note were EFT Management Services, Inc. and the Gould Family
24  Trust. This is dated June 10, 2011 (Exhibit 4).

25  14.     This promissory note included only EFT Management Services Inc. as the
26  borrower and the Gould Family Trust as the lender. BANCOM was not a party to the promissory
27  note.

28

**3**

PETITION UNDER PROBATE CODE §850 (a) (3) (B) AND CIVIL CODE §§1717 AND 1549 ET SEQ

Exhibit 5
Page 3 of 7

15.   The promissory note (**Exhibit 4**) included a provision that beginning March 10, 2012 on the 10th calendar day of each month the lender shall receive $.10 from each approved surcharged point of banking transaction that is processed through borrower in the month prior. The entire principal shall be paid in full no later than January 10, 2012.

16.   The promissory note made it clear that all $300,000 was to be paid to the lender by January 10, 2012.

17.   EFT was to pay a late charge of 1% of any payment not received within 10 days of its due date.

18.   Furthermore, in the event of default, "the entire principal remaining unpaid shall bear and augmented annual interest rate equal to the lesser of (i) seven and a half percent (7 1/2%) , or (ii) the highest applicable lawful rate."

19.   The contract stated "upon the occurrence and during the continuation of any event of default, lender, at its option, may at any time declare any or all other liabilities of any obligor or lender immediately due and payable (notwithstanding any contrary provisions thereof) without demand or notice of any kind. In addition, lender shall have the right to set off any and all sums owed by any obligor by lender in any capacity (whether or not to then do) against the loan and/or against any other liabilities of any obligor or lender." (**Exhibit 4, page 2**).

20.   EFT further agreed to pay all filing fees and similar charges in all costs incurred by lender in collecting or securing or attempting to collect or secure the loan, including reasonable attorney's fees (**Exhibit 4, page 3**).

21.   All parties waived the right to a trial by jury (**Exhibit 4, page 5**).

22.   An additional document signed by the parties includes a "pledge agreement" (**Exhibit 5**).

23.   This document acknowledged the note as well as the loan agreement, including the arrangement with BANCOM. This was a pledge of securities, specifically 10% of the membership units of BANCOM FINANCIAL GROUP LLC, subject to burn off.

24.   Petitioner is informed and believes respondents are in default of this agreement and have not made payments as agreed upon.

4

**PETITION UNDER PROBATE CODE §850 (a) (3) (B) AND CIVIL CODE §§1717 AND 1549 ET SEQ**

Exhibit 5
Page 4 of 7

## JURISDICTION AND VENUE

25.     Respondents are a Florida corporation and a Florida limited liability company. However, both parties have agreed under the terms of each agreement that any legal action concerning the agreements shall be governed by the laws of the state of California and venue shall be in either state or federal courts in Orange County, California.

26.     The Gould Family Trust is administered in the state of California with one of two trustees residing in Orange County, California. Decedent was a resident of Orange County, California.

27.     Therefore Venue in Orange County, California is proper.

## PETITIONER SEEKS RELIEF UNDER PROBATE CODE §§850 (A) (3) (B)

28.     Respondents agreed in writing to a loan agreement, a promissory note in a pledge agreement concerning the same $300,000 loan made by the then Trustee of the Gould Family Trust with funds from the trust.

29.     As noted above, the specific date that the note is mature, January, 10, 2012 was also specific. The remedy, jurisdiction and venue were also specified by the parties.

30.     Petitioner is informed and believes no principal payment was made and that respondent is in breach of contract. Furthermore, Petitioner is informed and believes other payments, pursuant to the agreement were not adequately made. Respondent therefore is in possession of assets that belong to the trustees of the Gould Family Trust.

31.     Therefore, under the terms of the agreement, petitioner is entitled to repayment of the full $300,000 as well as 7 1/2% interest starting June 10, 2011, compounded.

32.     In addition, petitioner seeks declaratory relief but the Gould Family Trust retains its ownership interest in BANCOM and EFT with no "burn off" having taken place. The agreement as between the parties specified ownership would only burn off if there was no default. As the parties have defaulted, it is appropriate the Trust retains its ownership.

33.     Furthermore, petitioner is entitled to reasonable receive attorneys fees pursuant to the agreement, according to proof. This is consistent with Civil Code §§1717.

PETITION UNDER PROBATE CODE §850 (a) (3) (B) AND CIVIL CODE §§1717 AND 1549 ET SEQ

Exhibit 5
Page 5 of 7

### CONCLUSION AND PRAYER

Petitioner hereby requests the following:

1.      Respondents, jointly and separately are to pay $300,000.00, with 7.5% interest starting June 10, 2012 until the date of payment.

2.      A declaratory Judgment the Gould Family Trust retains its ownership in Respondents EFT and BANCOM.

3.      Attorney Fees and costs according to proof.

4.      Respondents, jointly and separately be ordered to pay remaining rebate payments, according to proof.


Respectfully submitted,


_____                    Date: 2/24/15

Ahmed Shaikh, Attorney for Trustees and Petitioners

H. Kevin Gould and Jonathan L. Gould

6

PETITION UNDER PROBATE CODE §850 (A)(3)(B) AND CIVIL CODE §§1717 AND 1549 ET SEQ

Exhibit 5
Page 6 of 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERIFICATION

I have read the foregoing

**PETITION UNDER PROBATE CODE §850 (A) (3) (B) AND CIVIL CODE §§1717 AND 1549 ET SEQ**

and know the contents thereof, and I certify that the same is true of my own knowledge except as to those matters which are therein stated upon my information or belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on ___2 - 19___, 2015 By: _____

H. Kevin Gould

Executed on ___2 - 19___, 2015 By: _____

Jonathan L. Gould

7

PETITION UNDER PROBATE CODE §850 (A) (3) (B) AND CIVIL CODE §§1717 AND 1549 ET SEQ

Exhibit 5
Page 7 of 7

# Exhibit 6

## LOAN AGREEMENT

**LOAN AGREEMENT** (this *"Agreement"*), dated as of June _10_, 2011, made by Bancom Financial Group, LLC, *("Bancom")*, EFT Management Services, Inc. *("EFT")* and Gould Family Trust, *("Lender")*. Should any legal action be necessary, the venue shall be in Orange County, California. This Loan Agreement cannot be included in a bankruptcy case to dismiss the loan.

### RECITALS

WHEREAS, EFT has entered into a note dated June _10_, 2011 (the *"Note"*) amount aggregate principal amount of Three Hundred Thousand Dollars ($300,000.00) (the *"Indebtedness"* or *"Debt"*); and

WHEREAS, a condition of the Note requires Bancom and EFT to enter into this Loan Agreement;

NOW, **THEREFORE**, for good and valuable consideration which is hereby acknowledged by the parties, Bancom, EFT, and Lender agree as follows:

1.    **Defined Terms**. Capitalized terms used and not otherwise defined herein shall have the respective meanings ascribed to them in the Note. As used in this Agreement, the following terms have the meanings set forth in or incorporated by reference below:

"**Agreement**" means this Loan Agreement, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time with agreement from all parties involved, including Orval Gould or Dianna Gould. The terms of the residuals will not be changed after the note is paid off.

"**Note**" means that certain Promissory Note between EFT and Lender dated June _10_, 2011 in the principal amount of Three Hundred Thousand Dollars ($300,000.00).

"**Person**" means a person, a company, or any other body or group of persons.

"**Pledge**" means that certain Pledge Agreement between Bancom and Lender for Ten Percent (10%) of the membership interest of Bancom and of EFT, holding no value for Lender unless Borrower defaults. This 10% ownership cannot be sold, transferred, or otherwise disposed of, unless Bancom and EFT should default on this Loan Agreement.

"**Proceeds**" means the Three Hundred Thousand Dollars ($300,000.00) delivered by Lender as consideration for the Note.

2.    **Repayment of Note and Additional Payments**. EFT and Lender hereby agree that the Note shall be repaid as follows:

(a)    Lender shall receive $0.10 from each approved, surcharged Point of Banking transaction that is processed through Borrower in the prior month commencing in February 2012 for transactions processed in January 2012.

1

Ex 6
1 of 3

(b)     Payments shall continue until loan is paid in full.

(c)     This Loan Agreement may be paid in full or in part at any time without any prepayment penalty.

(d)     After the loan is paid back in full, Lender will receive an interest payment equal to $0.10 of the number of approved, surcharged Point of Banking transactions that are processed by Borrower for two full months, for the two months immediately following the last payment of the loan repayment.  Payment will be made no later than the 15th of the month following when the transactions occurred.

(e)     Starting on March 15, 2013, Orval and Dianna Gould shall receive a monthly rebate equal to $0.20 times the number of surcharged transactions that Bancom will receive from surcharge processing revenue for American ATM Images point of banking terminals.  This rebate shall be credited to Orval and Dianna Gould's account ending in 2343. The rebate will apply to up to 50,000 transactions per month, or $10,000.00 per month ($120,000 per year) – and will continue indefinitely for American ATM Image's POB portfolio.  American ATM Image shall never have to pay to EFT or Bancom more than $0.25 in surcharge for each POB transaction.  Orval and Dianna Gould will receive a monthly rebate of $0.20 and EFT will continue to receive $0.05 per approved withdrawal from American ATM Image.

(f)     Lender agrees to put in the full sum of Three Hundred Thousand Dollars ($300,000.00) within 10 business days of this agreement being signed by both parties.

3.     The Pledge of Bancom Membership Interest and "Burn-Off".  Lender agrees to release from the Pledge Agreement, Ten Percent (10%) of the membership Interest in Bancom and 10% of the membership interest in EFT as referred to in the Pledge Agreement between Bancom, EFT, and Lender for Ten (10%) of the membership interest of Bancom and Ten (10%) of the membership interest of EFT for every Thirty Thousand Dollars ($30,000.00) that Lender receives.  If Lender fails to receive the total sum of Three Hundred Thousand Dollars ($300,000.00), then the Pledge Agreement shall control the remaining membership interest subject thereto.

4.     Miscellaneous.

(a)     Severability.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

(b)     Headings.  The headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.

(c)     No Waiver; Cumulative Remedies.  Lender shall not by any act delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any default or in any breach of any of the terms and conditions hereof.  No

Ex b
2 of 3

failure to exercise, nor any delay in exercising, on the part of Lender, any right, power or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege. A waiver by Lender of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which Lender would otherwise have on any future occasion. The rights, remedies, powers and privileges herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any rights, remedies, powers or privileges provided by law.

(d)    Notices. Notices to be effective shall be in writing (including by facsimile transmission), addressed or transmitted to the parties at the address or facsimile number of the parties set forth below.

| EFT: | Bancom: | Lender: |
|------|---------|---------|
| 5722 S. Flamingo Rd.<br>#602<br>Cooper City, FL 33330 | 4611 S. University Dr.<br>#451<br>Davie, FL 33328 | 24155 Roma Drive<br>Mission Viejo, CA 92691 |

(e)    Governing Law. This Agreement shall be governed by and construed under the laws of the State of California, without reference to the conflicts of law provisions thereof. The parties further agree that any legal action or proceeding with respect to this Agreement or any document relating hereto may be brought only in the State or Federal Courts located in Orange County, California.

(f)    Counterparts. This Agreement may be executed in any number of counterparts and all the counterparts taken together shall be deemed to constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized officers as of the date set forth above.

BANCOM

By:

EFT

By:

LENDER

Ex 6
3 of 3

# Exhibit 7

# PLEDGE AGREEMENT

**PLEDGE** (this "*Agreement*"), dated as of June _10_, 2011, made by Bancom Financial Group, LLC, a Florida company ("*Pledgor*"), in favor of Gould Family Trust, ("*Pledgee*"). Should any legal action be necessary, the venue shall be in Orange County, California. This Pledge Agreement cannot be included in a bankruptcy case to dismiss the loan.

## RECITALS

WHEREAS, EFT Management Services, Inc. has entered into a note dated June _10_, 2011 (the "*Note*") amount aggregate principal amount of Three Hundred Thousand Dollars ($300,000.00) (the "*Indebtedness*" or "*Debt*");

WHEREAS, a condition of the Note requires the Pledgor to execute this Pledge; and

WHEREAS, pursuant to the terms of the Loan Agreement, the Pledgor agreed to pledge to the Pledgee Ten Percent (10%) of the ownership of Bancom Financial Group, LLC (the "*Pledged Securities*"), in order to secure EFT Managements Services, Inc. obligations under the Note.

NOW, THEREFORE, for good and valuable consideration which is hereby acknowledged by the parties, Pledgor hereby agrees with Pledgee as follows:

1. **Defined Terms.** Capitalized terms used and not otherwise defined herein shall have the respective meanings ascribed to them in the Note. As used in this Agreement, the following terms have the meanings set forth in or incorporated by reference below:

"<u>Agreement</u>" means this Pledge Agreement, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

"<u>Code</u>" means the Uniform Commercial Code from time to time in effect in the State of California, or, as the context may require, in the State or States in which any Collateral is located.

"<u>Collateral</u>" has the meaning ascribed to such term in <u>Section 2</u> hereof.

"<u>Debt</u>" shall mean the outstanding principal amount of the Indebtedness together with all interest accrued and unpaid thereon and all other sums due to Pledgee in respect of the Indebtedness Documents.

"<u>Event of Default</u>" shall mean any default under the Indebtedness Documents.

"<u>Indebtedness Documents</u>" means the Note, the Loan Agreement and the Pledge.

"<u>Loan Agreement</u>" means that certain Loan Agreement entered into between EFT, Pledgee and Pledgor dated June _10_, 2011.

"<u>Note</u>" means that certain Promissory Note between EFT Management Services, Inc and

1

EX 7.
1 of 8

Pledge dated June _ID_, 2011 in the principal amount of Three Hundred Thousand Dollars ($300,000.00).

"**Person**" means a person, a company, or any other body or group of persons.

"**Pledgee**" has the meaning ascribed to such term in the introductory paragraph.

"**Pledgor**" has the meaning ascribed to such term in the introductory paragraph.

"**Pledged Securities**" means Ten Percent (10%) of the membership units of Bancom Financial Group, LLC subject to the Burn-Off as noted in the Loan Agreement, holding no value unless Pledgor should default on this Pledge.

"**Proceeds**" means all "proceeds" as such term is defined in the Code and also, to the extent not included in the foregoing, (i) any and all distributions of cash or property when assets or securities of the Pledgor are sold, exchanged, collected or otherwise disposed of, both cash and non-cash, and all payments or distributions paid or payable in connection with the Pledged Securities; and (ii) any and all other amounts from time to time payable to Pledgor under or in connection with any of the Collateral.

Terms used herein but not otherwise defined herein shall have the respective meanings ascribed to them in the Indebtedness Documents.

(a)      The words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and section, subsection, schedule and exhibit references are to this Agreement unless otherwise specified.

(b)      The word "including" when used in this Agreement shall be deemed to be followed by the words "but not limited to."

2.      **Pledge; Grant of Security Interest.**   Pledgor hereby pledges and grants to Pledgee, as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the Indebtedness, a first priority security interest in all of Pledgor's right, title and interest to the following (collectively, the "*Collateral*"):

(a)      the Pledged Securities;

(b)      all Proceeds of the Pledged Securities.

3.      **Representations and Warranties.**  Pledgor represents and warrants as of the date hereof that:

(a)      no authorization, consent of or notice to any other Person (including, without limitation, any member or creditor of Pledgor) that has not been obtained, is required in connection with the execution, delivery, performance, validity or enforceability of this

E4.7
2 of 8

Agreement including, without limitation, the assignment and transfer by Pledgor of any of the Collateral to Pledgee or the subsequent transfer thereof by Pledgee pursuant to the terms hereof;

(b)    Pledgor is the record and beneficial owner of, and has good title to, the Pledged Securities, free of any and all liens or options in favor of, or claims of, any other Person, except the lien created by this Agreement and the Pledged Securities have not previously been assigned, sold, transferred, pledged or encumbered (except pursuant to this Agreement);

(c)    the lien granted pursuant to this Agreement will constitute a valid, perfected first priority lien on the Pledged Securities and related Proceeds in such jurisdictions, enforceable as such against all creditors of Pledgor and any Persons purporting to purchase any Pledged Securities and related Proceeds from Pledgor;

(d)    there currently exist no certificates, instruments or writings representing the Pledged Securities.

4.    **Covenants.**  Pledgor covenants and agrees with Pledgee that, from and after the date of this Agreement until the Debt is paid in full:

(a)    **Acknowledgements of Parties.** · If Pledgor shall, as a result of its ownership of the Pledged Securities, become entitled to receive or shall receive any certificate representing a distribution in connection with any reclassification, increase or reduction of capital or any certificate issued in connection with any reorganization, option or rights, whether in addition to, in substitution of, as a conversion of, or in exchange for any shares of the Pledged Securities, or otherwise in respect thereof, Pledgor shall accept the same as Pledgee's agent, hold the same in trust for Pledgee and deliver the same forthwith to Pledgee in the exact form received, duly endorsed by Pledgor to Pledgee, if required, to be held by Pledgee hereunder as additional security for the Debt. Any sums paid upon or in respect of the Pledged Securities upon the liquidation of Pledgor shall be paid over to Pledgee to be held by it hereunder as additional security for the Debt, and in case any distribution of capital shall be made on or in respect of the Pledged Securities or any property shall be distributed upon or with respect to the Pledged Securities pursuant to the recapitalization or reclassification of the capital of Pledgor or pursuant to the reorganization thereof, the property so distributed shall be delivered to Pledgee to be held by it, subject to the terms hereof, as additional security for the Debt.  If any sums of money or property so paid or distributed in respect of the Pledged Securities shall be received by Pledgor, Pledgor shall, until such money or property is paid or delivered to Pledgee, as additional security for the Debt.

(b)    **Actions of Pledgor.**  Without the prior written consent of Pledgee, Pledgor shall not, directly or indirectly (i) sell, assign, transfer, exchange or otherwise dispose of, or grant any option with respect to, the Collateral, or (ii) create, incur, authorize or permit to exist any Lien or option in favor of, or any claim of any Person with respect to, any of the Collateral, or any interest therein, except for the Lien provided for by this Agreement. Pledgor shall defend the right, title and interest of Pledgee in and to the Collateral against the claims and demands of all Persons whomsoever.

EX 7
3 of 8

(c)     <u>Limitation on Liens</u>.  Pledgor will not create, incur or permit to exist, will defend the Collateral against, and, at its cost and expense, will take all such other action as is necessary to remove, any lien or claim on or to the Collateral, other than the liens created hereby, and will defend the right, title and interest of the Pledgee in, to and under the Collateral against the claims and demands of all Persons whomsoever.

(d)     <u>Changes in Location, Name, etc.</u>  Pledgor will not, unless (i) it shall have given prior written notice to such effect to Pledgee and (ii) all action necessary or advisable, in Pledgee's opinion, to protect and perfect the liens and security interests intended to be created hereunder with respect to the Pledged Securities shall have been taken, (a) change its name, identity or structure, or (b) reorganize or reincorporate under the laws of another jurisdiction.

(e)     <u>Hold Harmless; Taxes</u>.  Pledgor shall pay, and save Pledgee harmless from, any and all liabilities with respect to, or resulting from any delay in paying, any and all stamp, excise, sales or other taxes which may be payable or determined to be payable with respect to any of the Collateral or in connection with any of the transactions contemplated by this Agreement.

5.     <u>Rights of Pledgee</u>.

(a)     If an Event of Default shall occur and be continuing for five (5) business days, Pledgee shall have the right to receive any and all income, distributions, proceeds or other property received or paid in respect of the Pledged Securities and make application thereof to the Debt, in such order as Pledgee, in its sole discretion, may elect, in accordance with the Indebtedness Documents.  If an Event of Default shall occur and be continuing, then all such Pledged Securities at Pledgee's option, shall be registered in the name of Pledgee or its nominee (if not already so registered), and Pledgee or its nominee may thereafter exercise (i) all voting, and all ownership rights, and other rights pertaining to the Pledged Securities, and (ii) any and all rights of conversion, exchange, and subscription and any other rights, privileges or options pertaining to such Pledged Securities as if it were the absolute owner thereof (including, without limitation, the right to exchange at its discretion any and all of the Pledged Securities upon the merger, consolidation, reorganization, recapitalization or other fundamental change in the organizational structure of Bancom Financial Group, LLC, as applicable, or upon the exercise by Pledgor or Pledgee of any right, privilege or option pertaining to such Pledged Securities, and in connection therewith, the right to deposit and deliver any and all of the Pledged Securities with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as it may determine), all without liability except to account for property actually received by it, but Pledgee shall have no duty to exercise any such right, privilege or option and shall not be responsible for any failure to do so or delay in so doing.

(b)     The rights of Pledgee under this Agreement shall not be conditioned or contingent upon the pursuit by Pledgee of any right or remedy against Pledgor or against any other Person which may be or become liable in respect of all or any part of the Debt or against any other security therefor, guarantee thereof or right of offset with respect thereto.  Pledgee shall not be liable for any failure to demand, collect or realize upon all or any part of the Collateral or for any delay in doing so, nor shall it be under any obligation to sell or otherwise

EX 7
4 of 8

dispose of any Collateral upon the request of Pledgor or any other Person or to take any other action whatsoever with regard to the Collateral or any part thereof.

(c) Upon satisfaction in full of the Debt and payment of all amounts owed to Pledgee, Pledgee's rights under this Agreement shall terminate and Pledgee shall execute and deliver to Pledgor termination statements or similar documents and agreements to terminate all of Pledgee's rights under this Agreement and all documents related to the Indebtedness.

6. **Remedies.**

(a) If an Event of Default shall occur and be continuing for five (5) business days after written notice, Pledgee may exercise, in addition to all other rights and remedies granted in this Agreement and in any other instrument or agreement securing, evidencing or relating to the Debt:

(i) all rights and remedies of a secured party under the Code (whether or not said Code is in effect in the jurisdiction where the rights and remedies are asserted) and such additional rights and remedies to which a secured party is entitled under the laws in effect in any jurisdiction where any rights and remedies hereunder may be asserted, including, without limitation, the right, to the maximum extent permitted by law, to exercise all voting, consensual and other powers of ownership pertaining to the Collateral as if Pledgee were the sole and absolute owner thereof (and Pledgor agrees to take all such action as may be appropriate to give effect to such right);

(ii) Pledgee may make any reasonable compromise or settlement deemed desirable with respect to any of the Collateral and may extend the time of payment, arrange for payment in installments, or otherwise modify the terms, of any of the Collateral; and

(iii) Pledgee in its discretion may, in its name or in the name of Pledgor or otherwise, demand, sue for, collect, direct payment of or receive any money or property at any time payable or receivable on account of or in exchange for any of the Collateral, but shall be under no obligation to do so.

(b) Without limiting the generality of the foregoing, Pledgee, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law referred to below or otherwise required hereby) to or upon Pledgor, or any other Person (all and each of which demands, presentments, protests, advertisements and notices, or other defenses, are hereby waived to the extent permitted under applicable law), may in such circumstances forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, assign, give option or options to purchase or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale or sales, in the over-the-counter market, at any exchange, broker's board or office of Pledgee or elsewhere upon such terms and conditions as it may deem advisable and at such prices as it may deem best in its sole discretion, for cash or on credit or for future delivery without assumption of any credit risk.

EX 7
5 of 8

Pledgee shall have the right, without notice or publication, to adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place then fixed for such sale, and any such sale may be made at any time or place to which the same may be adjourned without further notice. Pledgee shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold, free of any right or equity of redemption of Pledgor, which right or equity of redemption is hereby waived or released. Pledgee shall apply any Proceeds from time to time held by it and the net proceeds of any such collection, recovery, receipt, appropriation, realization or sale, after deducting all reasonable costs and expenses of every kind incurred therein or incidental to the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of Pledgee hereunder, including, without limitation, reasonable attorneys' fees and disbursements, to the payment in whole or in part of the Debt, in such order as Pledgee may elect, and only after such application and after the payment by Pledgee of any other amount required by any provision of law, including, without limitation, Article 9 of the Code, without the need for Pledgee to account for the surplus, if any, to Pledgor. To the extent permitted by applicable law, Pledgor waives all claims, damages and demands it may acquire against Pledgee arising out of the exercise by Pledgee of any of its rights hereunder. If any notice of a proposed sale or other disposition of Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least ten (10) days before such sale or other disposition.

(c)     The rights, powers, privileges and remedies of Pledgee under this Agreement are cumulative and shall be in addition to all rights, powers, privileges and remedies available to Pledgee at law or in equity. All such rights, powers and remedies shall be cumulative and may be exercised successively or concurrently without impairing the rights of Pledgee hereunder.

7.     **Release of Pledged Securities**.

Notwithstanding anything to the contrary contained herein, upon full payment of all amounts due to the Pledgee, Pledgee's security interest and rights in and to the Pledged Securities shall terminate.

8.     **Miscellaneous**.

(a)     **Severability**. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

(b)     **Headings**. The headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.

(c)     No **Waiver; Cumulative Remedies**. Pledgee shall not by any act delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or

EX 7
6 of 8

to have acquiesced in any default or in any breach of any of the terms and conditions hereof. No failure to exercise, nor any delay in exercising, on the part of Pledgee, any right, power or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege. A waiver by Pledgee of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which Pledgee would otherwise have on any future occasion. The rights, remedies, powers and privileges herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any rights, remedies, powers or privileges provided by law.

(d)   Waivers and Amendments; Successors and Assigns. None of the terms or provisions of this Agreement may be waived, amended, or otherwise modified except by a written instrument executed by the party against which enforcement of such waiver, amendment, or modification is sought. This Agreement shall be binding upon and shall inure to the benefit of Pledgor and the respective successors and assigns of Pledgor and shall inure to the benefit of Pledgee and its successors and assigns; provided no Pledgor shall have any right to assign its rights hereunder.

(e)   Notices. Notices to be effective shall be in writing (including by facsimile transmission), addressed or transmitted to Pledgor or Pledgee at the address or facsimile number of the parties set forth below.

| Pledgee: | Pledgor: |
|---|---|
| Gould Family Trust | Bancom Financial Group LLC |
| 24155 Roma Drive | 4611 S. University Dr. #451 |
| Mission Viejo, CA 92691 | Davie, Fl. 33328 |
| Fax: 949-830-4649 | Fax: 954-241-6605 |

(f)   Governing Law. This Agreement shall be governed by and construed under the laws of the State of California, without reference to the conflicts of law provisions thereof. Pledgor and Pledgee further agree that any legal action or proceeding with respect to this Agreement or any document relating hereto may be brought only in the State or Federal Courts located in Orange County, California.

(g)   Agents. Pledgee may employ agents and attorneys-in-fact in connection herewith and shall not be responsible for their actions except for the gross negligence or willful misconduct of any such agents or attorneys-in-fact selected by it in good faith.

(h)   Counterparts. This Agreement may be executed in any number of counterparts and all the counterparts taken together shall be deemed to constitute one and the same instrument.

Ex 7
7 of 8

(i)    Joint and Several Liability. If Pledgor consists of more than one person or party, the obligations and liabilities of each such person or party hereunder shall be joint and several.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized officers as of the date set forth above.

PLEDGOR:

By: _____

Name: _____

PLEDGEE:

By: _____

Name: ORVAL E Gould

E x 7
8 of 8

# Exhibit 8

# PROMISSORY NOTE

$300,000.00                                                                June _10_ , 2011

      FOR VALUE RECEIVED, EFT Management Services, Inc, a Florida Corporation (sometimes hereinafter referred to as the "undersigned" or the "Borrower" or "Obligor(s)"), promises to credit Gould Family Trust or any subsequent holder or assignee of this note ("Lender") to any account that Lender may designate, up to the principal sum of Three Hundred Thousand 00/100 Dollars ($300,000.00). This Promissory Note is hereinafter referred to as "Agreement". This Agreement is contingent upon the Borrower receiving a total of Three Hundred Thousand 00/100 Dollars ($300,000.00) from Lender (the consideration for this note) within ten (10) business days from the date of this signed agreement. Should any legal action be necessary, the venue shall be in Orange County, California. This Promissory Note cannot be included in a bankruptcy case to dismiss the loan.

    1.   <u>Repayment Terms</u>

      Repayment shall commence on a monthly basis no later than the 10th calendar day of each month, beginning on or before March 10, 2012 in such amounts as Borrower shall calculate based upon certain parameters. Lender shall receive $0.10 from each approved, surcharged Point of Banking transaction that is processed through Borrower in the month prior. The entire principal amount shall be paid in full no later than January 10, 2012 (the "Maturity Date").

      Borrower shall pay to Lender a late charge of one percent (1%) of any payment not received by Lender within ten (10) days of its due date; provided, however, if said ten (10) day period ends on a day other than a Saturday, Sunday or a Federal Holiday (a "Business Day"), then the aforedescribed late charge shall be payable if the payment is not received by the last Business Day within said ten (10) day period.

    2.   This Note may be paid in full or in part at any time without any prepayment penalty.

    3.   Borrower shall pay all amounts owing under this Note in full when due without set-off, counterclaim deduction or withholding for any reason whatsoever. If any payment falls due on a day other than a Business Day, then such payment shall instead be made on the next succeeding Business Day.

    4.   If default be made in the payment of any sums payable pursuant to the terms of this Note, or if default, following any applicable cure period, or other event causing the acceleration of this Note occur under any other instrument or document executed in connection with the Loan (this Note and all such instruments and documents securing this Note, are referred to in this Note as the "Loan Documents") (an "Event of Default"), then or at any time thereafter at the option of Lender, the whole of the principal sum then remaining unpaid hereunder,

1

Ex 8
1 of 5

together with all other sums owing under the Loan Documents, shall immediately become due and payable without notice and Lender shall be entitled to pursue any and all rights and remedies provided by applicable law and/or under the terms of this Note or any other Loan Document, all of which shall be cumulative and may be exercised successively or concurrently.  Upon the occurrence and during the continuation of any Event of Default, Lender, at its option, may at any time declare any or all other liabilities of any Obligor to Lender immediately due and payable (notwithstanding any contrary provisions thereof) without demand or notice of any kind.  In addition, Lender shall have the right to set off any and all sums owed to any Obligor by Lender in any capacity (whether or not then due) against the Loan and/or against any other liabilities of any Obligor to Lender.

From and after an Event of Default, and regardless of whether the Lender also elects to accelerate the maturity of this Note, the entire principal remaining unpaid hereunder shall bear an augmented annual interest rate equal to the lesser of (i) seven and a half percent (7.5%) per annum, or (ii) the highest applicable lawful rate.  Failure to exercise any and all rights or remedies Lender may in the event of any such default be entitled to shall not constitute a waiver of the right to exercise such rights or remedies in the event of any subsequent default, whether of the same or different nature.  No waiver of any right or remedy by Lender shall be effective unless made in writing and signed by Lender, nor shall any waiver on one occasion apply to any future occasion.

5.    In no event shall any agreed or actual exaction charged, reserved or taken as an advance or forbearance by Lender as consideration for the Loan exceed the limits (if any) imposed or provided by the law applicable from time to time to the Loan for the use or detention of money or for forbearance in seeking its collection, and Lender hereby waives any right to demand such excess. If the Rate should increase above such maximum interest rate permitted by applicable law (if any), then notwithstanding any contrary provision in this Note or any other Loan Document and without necessity of further agreement or notice by Lender or any Obligor, the unpaid principal balance of the Loan shall thereupon bear interest at such maximum lawful rate.  If the Rate should thereafter decrease below such maximum lawful rate, the Loan shall nevertheless continue to bear interest at such maximum lawful rate until Lender, receives the full amount of interest delayed by the application of such maximum lawful rate under this paragraph, at which time the Loan shall once again bear interest at the then applicable Rate.  In the event that the interest provisions of this Note or any exactions provided for in this Note or any other Loan Document shall result at any time or for any reason in an effective rate of interest that transcends the maximum interest rate permitted by applicable law (if any), then without further agreement or notice the obligation to be fulfilled shall be automatically reduced to such limit and all sums received by Lender in excess of those lawfully collectible as interest shall be applied against the principal of the Loan immediately upon Lender's receipt thereof, with the same force and effect as though the payor had specifically designated such extra sums to be so applied to principal and Lender had agreed to accept such extra payment(s) as a premium-free prepayment or prepayments. During any time that the Loan bears interest at the maximum lawful rate (whether by application of this paragraph, the default provisions of this Note or otherwise), interest shall be computed on the basis of the actual number of days elapsed and the actual number of days in the respective calendar year. Pursuant to Florida Statutes, Section 687.12, the interest rate charged is authorized by Florida Statutes, Chapter 665.

6.    The Obligors hereby severally: (a) waive demand, presentment, protest, notice of dishonor, suit against or joinder of any other person, and all other requirements necessary to

2

Ex 8
2 of 5

charge or hold any Obligor liable with respect to the Loan; (b) waive any right to immunity from any such action or proceeding and waive any immunity or exemption of any property, wherever located, from garnishment, levy, execution, seizure or attachment prior to or in execution of judgment, or sale under execution or other process for the collection of debts; (c) waive any right to interpose any set-off or non-compulsory counterclaim or to plead laches or any statute of limitations as a defense in any such action or proceeding and waive (to the extent lawfully waivable) all provisions and requirements of law for the benefit of any Obligor now or hereafter in force; (d) submit to the jurisdiction of the state and federal courts in Orange County, California for purposes of any such action or proceeding; (e) stipulate that service of process in any such action or proceeding shall be properly made if mailed by any form of registered or certified mail (airmail if international), postage prepaid, to the address then registered in Lender's records for the Obligor(s) so served, and that any process so served shall be effective ten (10) days after mailing; and (f) agree that sixty (60) days following the death of any Obligor who is a natural person and the failure of the Borrower to: (g) cause the estate of such Obligor to recognize the obligation; and (h) provide an additional guarantor acceptable to the Lender, or the dissolution or merger or consolidation or termination of the existence of any Obligor that is a business entity (or if any person controlling such Obligor shall take any action authorizing or leading to the same), shall at Lender's option, which option may be exercised then or at any time thereafter, result in the Loan being then due and payable in full. No provision of this Note shall limit Lender's right to serve legal process in any other manner permitted by law or to bring any such action or proceeding in any other competent jurisdiction. The Obligors hereby severally consent and agree that, at any time and from time to time without notice, (i) Lender and the owners(s) of any collateral then securing the Loan may agree to release, increase, change, substitute or exchange all or any part of such collateral, and (ii) Lender and any person(s) then primarily liable for the Loan may agree to renew, extend or compromise the Loan in whole or in part or to modify the terms of the Loan in any respect whatsoever; no such release, increase, change, substitution, exchange, renewal, extension, compromise or modification shall release or affect in any way the liability of any Obligor, and the Obligors hereby severally waive any and all defenses and claims whatsoever based thereon. Until Lender receives all sums due under this Note and all other Loan Documents in immediately available funds, no Obligor shall be released from liability with respect to the Loan unless Lender expressly releases such Obligor in a writing signed by Lender, and Lender's release of any Obligor(s) shall not release any other person liable with respect to the Loan.

7.     The Obligors jointly and severally agree to pay all filing fees and similar charges and all costs incurred by Lender in collecting or securing or attempting to collect or secure the Loan, including reasonable attorney's fees, whether or not involving litigation and/or appellate, administrative or Bankruptcy proceedings. The Obligors jointly and severally agree to pay any documentary stamp taxes, intangibles taxes or other taxes which may now or hereafter apply to this Note or the Loan or any security therefor, and the Obligors jointly and severally agree to indemnify and hold Lender harmless from and against any liability, costs, attorney's fees, penalties, interest or expenses relating to any such taxes, as and when the same may be incurred. The Obligors jointly and severally agree to pay on demand, and to indemnify and hold Lender harmless from and against, any and all present or future taxes, levies, imposts, deductions, charges and withholdings imposed in connection with the Loan by the laws or governmental authorities of any jurisdiction other than the State of California or the United States of America, and all payments to Lender under this Note shall be made free and clear thereof and without deduction therefor.

3

Ex 8
3 of 5

8.     This Note shall be governed by, and construed and enforced in accordance with, the laws of the State of California, except that federal law shall govern to the extent that it may permit Lender to charge, from time to time, interest on the Loan at a rate higher than may be permissible under applicable California law.

9.     Any provision of this Note which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction only, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.  To the extent that the Obligors may lawfully waive any law that would otherwise invalidate any provision of this Note, each of them hereby waives the same, to the end that this Note shall be valid and binding and enforceable against each of them in accordance with all its terms.

10.     If this Note is signed by more than one person, then the term "Borrower" as used in this Note shall refer to all such persons jointly and severally, and all promises, agreements, covenants waivers, consents, representations, warranties and other provisions in this Note are made by and shall be binding upon each and every undersigned person, jointly and severally. The term "Lender" shall be deemed to include any subsequent holder(s) of this Note.  Whenever used in this Note, the term "person" means any individual, firm, corporation, trust or other organization or association or other enterprise or any governmental or political subdivision, agency, department or instrumentality thereof.  Whenever used in this Note, words in the singular include the plural, words in the plural include the singular, and pronouns of any gender include the other genders, all as may be appropriate.

11.     Time shall be of the essence with respect to the terms of this Note.  This Note cannot be changed or modified orally.  Lender shall have the right unilaterally to correct patent errors or omissions in this Note or any other Loan Document.  Except as otherwise required by law or by the provisions of this Note or any other Loan Document, payments received by Lender hereunder shall be applied first against expenses and indemnities, next against interest accrued on the Loan, and next in reduction of the outstanding principal balance of the Loan, except that from and after any default under this Note, Lender may apply such payments in any order of priority determined by Lender in its exclusive judgment.  Borrower shall receive immediate credit on payments only if made in the form of either a federal wire transfer of cleared funds, and ACH credit posted funds, or a check drawn on an account maintained with Lender containing sufficient available funds.  Otherwise, Borrower shall receive credit on payments after clearance, which shall be no sooner than the first Business Day after receipt of payment by Lender.  For purpose of determining interest accruing under this Note, principal shall be deemed outstanding on the date payment is credited by Lender.  Except as otherwise required by the provisions of this Note or any other Loan Document, any notice required to be given to any Obligor shall be deemed sufficient if made personally or if mailed, postage prepaid, to such Obligor's address as it appears in this Note.  Lender may grant participations in all or any portion of, and may freely, and without Borrower's permission, assign all or any part of Lender's rights under, this Note. Lender may disclose to any such participant or assignee any and all information held by or known to Lender at any time with respect to any Obligor.  All of the terms of this Note shall inure to the benefit of Lender and its successors and assigns and shall be binding upon each and every one of the Obligors and their respective heirs, executors, administrators, personal representatives, successors and assigns, jointly and severally.

4

Ex 8
4 of 5

12.   This Note shall be secured by a Pledge Agreement and is executed in conjunction with a Loan Agreement of even date.

13.   LENDER AND BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS, (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY.   BORROWER ACKNOWLEDGES THAT THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT TO THE LENDER IN EXTENDING CREDIT TO THE BORROWER, THAT THE LENDER WOULD NOT HAVE EXTENDED SUCH CREDIT WITHOUT THIS JURY TRIAL WAIVER, AND THAT BORROWER HAS BEEN REPRESENTED BY AN ATTORNEY OR HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY IN CONNECTION WITH THIS JURY TRIAL WAIVER AND UNDERSTANDS THE LEGAL EFFECT OF THIS WAIVER.

WITNESS the due execution hereof as of the date first above written.

Date: 6/10/2011

EFT Management Services, Inc

By: Stacey Celidonia
Stacey Celidonia, President

DOCUMENTARY STAMPS IN THE AMOUNT PRESCRIBED BY FLORIDA LAW HAVE BEEN PAID AND CANCELLED ON THIS PROMISSORY NOTE.

EFT Management Services, Inc

Signature Stacey Celidonia
Stacey Celidonia, President

Date 6/9/11

Gould Family Trust

Signature Orval E Gould

Name Orval E Gould

Date 6-9-11

5

Ex 8
5 of 5

EXHIBIT 4, Page 139



$3.40⁰
US POSTAGE
FIRST-CLASS

071V00695370
92780
000001719

Ahmed Shaikh Attorney At Law
Probate and Trust Practice
14471 Chambers Rd, Suite 103
Tustin, CA 92780

RECEIVED
JAN 2 7 2016
BY:

Scott T. Lyon, Esq.
Sedgwick LLP
2020 Main St Ste 1100
Irvine, CA 92614-8234